## M. FEIRBAUGH ET AL., Appellants, *v.* J. MASTERSON, Respondent.

Possessory Rights—Prior Possession—Evidence of Title.—It is a well-settled rule in relation to possessory rights that prior possession is *prima facie* evidence of title.

Prior Possession.—To entitle a party to hold by right of prior possession, there must be an actual, *bona fide* occupation, a *possessio pedis*, a subjection to the will and control.

Idem.—It is not necessary that the occupant should cultivate the property claimed. It is sufficient if it be subjected to his use in the manner pointed out. Neither is any particular kind of inclosure required where a party is in possession of the land marked by distinct monuments of boundary, whether the same be a natural or an artificial inclosure. Claiming a title to the whole tract, the possession of the part so occupied will draw after it the possession of the whole.

Public Lands—Actual Possession.—In relation to public lands which are not mineral lands, the title, as between citizens of the territory, where neither connects himself with the government, is considered as vested in the first possessor, and to proceed from him. This possession must be actual, and not constructive.

Prior Possession—Actual Possession.—Where reliance is placed upon the prior possession of the plaintiff, or of parties through whom he claims, such possession must be shown to have been actual in him or them. By actual possession is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property.

Notice.—The lines were pointed out to the defendant by the plaintiffs with reasonable accuracy, and we see no good reason why actual notice is not

equally as good so far as bringing home to the defendant a knowledge of the plaintiffs' rights are concerned, as that afforded by stakes or like monuments.

IDEM.—Having gone into the actual possession of a portion of the premises, they were entitled to a reasonable length of time in which to inclose them. What this length of time should be must, for the most part, depend upon the particular circumstances and locality of each claim.

POSSESSION OF PART.—If a party were to locate and claim for agricultural purposes a tract of land, and were to reside upon, inclose, and cultivate a portion of the same, having artificial monuments sufficient to indicate generally the boundaries of the entire claim, this would most certainly be a substantial compliance with the rule, and such possession of a part would draw after it the possession of the whole.

ASSIGNMENT OF ERROR—PRACTICE.—The supreme court will not scrutinize a voluminous transcript to ascertain whether the inferior court may possibly have committed some error to the prejudice of the complaining party, unless it should first have been assigned.

APPEAL from the third judicial district, Owyhee county. It is quite impossible to give a much fuller detail of facts than is contained in the opinion of the court. Reference is made in the transcript to a map of the premises as giving a very accurate description of them, the location of the "cabins," the amount and location of the fencing, etc., but this map was not sent up, or has been lost. Hence, all these facts were ascertained alone from the evidence of the witnesses as written down by the clerk on the trial.

*Curtis & George, Miller, and Huggan,* for the appellants:

The supreme court in the state of California have held, in the following cases, that proof of prior possession is enough to maintain ejectment against a mere naked trespasser: 4 Cal. 34, 69, 78, 96, 278, 293; 5 Id. 250, 486; 7 Id. 39, 153, 302; 9 Id. 5, 437.

*Henry Martin,* for the respondent.

CUMMINS, J., delivered the opinion of the court, McBRIDE, C. J., concurring.

This was an action of ejectment for the recovery of premises situate in Owyhee county. A jury having been expressly waived by the parties, a trial was had by the court. The judgment was for the defendant, after which the plaintiffs move for a new trial upon the grounds:

1. That the findings of the court and the judgment thereon are against law.

2. For errors in law occurring on the trial and excepted to on the part of the plaintiffs.

This motion was denied by the court, from which order denying a new trial an appeal is taken to this court.   The testimony was reduced to writing by the clerk by order of the court, and is incorporated in the record.   The pleadings are in the usual form in actions of this character, plaintiffs alleging that they were in the quiet, peaceable, and exclusive possession prior to defendant's entry upon the disputed premises, which is traversed by the defendant.

It is contended by the appellants that the "findings of fact by the court below are against the evidence and unsupported by law."   It is a well-settled rule in relation to possessory rights that prior possession is *prima facie* evidence of title.   This principle is firmly fixed in the jurisprudence of the country.   Much difficulty, however, is often met with in the proper application of this rule to given cases.   In this case it appears from the evidence that the plaintiffs went upon the tract of land described in their complaint, and which consists of about three quarter sections, about the sixteenth of August, 1864; that several days subsequent to this they commenced inclosing this tract of land with a fence; that during this time they were residing upon the premises, and engaged at times in making shingles.   After they had completed about three fourths of a mile of their fence, the defendant came upon the premises, and after marking a few trees, had a conversation with some of the parties who were then claiming the land, at which time the plaintiffs notified him that they claimed the land, pointed out the fence they were then engaged in building, and further pointed out to him the general boundaries of their claim as accurately as they well could do.   The defendant then requested one of them to go with him and point out more particularly the boundaries of their claim; but, after proceeding a short distance beyond the fence, the defendant declined going any farther, after which he proceeded to inclose a tract of land included within the limits pointed out

to him as the lines bounding plaintiffs' claim. The plaintiffs continued at work until they completed their fence, which was some six weeks subsequent to their location. It does not appear that the defendant ever resided upon the tract of land he claimed, although he entirely, or nearly so, inclosed it with a fence and commenced the erection of a cabin thereon. As to the character of the fences of both parties there is some conflict of testimony, though it seems they were made by felling trees and putting brush together, sufficient in many places to turn stock, in others not. These facts are well established by the evidence. It is proper here to remark that the premises claimed by the defendant, being one hundred and sixty acres in extent, are those in dispute in this action.

The question now presents itself upon this state of facts: Did the plaintiffs have actual possession of the premises in controversy at the time the defendant went upon them, which was about the twenty-fifth of August, 1864? Was the occupancy of the plaintiffs at that time an actual, peaceable, and exclusive possession of the entire premises claimed by them, including that portion subsequently claimed by the defendant, such as is sufficient in law to entitle them to the exclusive enjoyment of the same as against every other claimant except the general government?

The supreme court of California, in the case of *Plume* v. *Seward et al.*, say, in relation to this subject, that "there must be an actual, *bona fide* occupation, a *possessio pedis*, a subjection to the will and control, as contradistinguished from the mere assertion of title, and the exercise of actual acts of ownership, such as recording deeds, paying taxes, etc. This being the case, it becomes necessary to inquire, if a party who enters on land with no higher claim of title than that which the law presumes from his possession, is entitled to claim more than the quantity thus actually occupied by him. This question has been frequently decided in most of the western states, where entries have been made upon public lands by persons unable to reduce the whole of the lands to actual occupation by fencing and cultivation. These entries have for the most part been made by settlers

claiming one hundred and sixty acres under pre-emption laws, or some local custom on the subject. In many cases the occupation of a portion of the land and the blazing of trees, so as to distinctly mark the extent and boundaries of the claim, have been held to operate as notice, and carry the possession to the whole tract; so the felling of timber around a tract of land, and the building of a brush fence, have been held as sufficient acts of the party in occupation of a part, to draw after them the possession of the land so inclosed. The character of the improvement must, in a great measure, depend upon the locality. It is not necessary the occupant should cultivate the property thus claimed; it is sufficient if it be subjected to his use in the manner pointed out. Neither is any particular kind of inclosure required where a party is in possession of the land marked by distinct monuments of boundaries, whether the same be a natural or an artificial inclosure. Claiming title to the whole tract, the possession of the part so occupied will draw after it the possession of the whole." (*Vide Plume* v. *Seward et al.*, 4 Cal. 95.)

And again the same tribunal held that "with the public lands, which are not mineral lands, the title, as between citizens of the state, where neither connects himself with the government, is considered as vested in the first possessor, and to proceed from him. This possession must be actual and not constructive, and the right it confers must be distinguished from the right given by the possessory act of the state. *   *   *   *   Where reliance is placed, not upon the act, but upon the prior possession of the plaintiff or of parties through whom he claims, such possession must be shown to have been actual in him or them. By actual possession is meant a subjection to the will and dominion of the claimant as is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property." (*Coryell* v. *Cain*, 16 Cal. 567.)

Applying the rule here laid down to the case at bar, we find that the plaintiffs had fully complied with all that is required by law in order to vest the right of possession in

them and to render the subsequent entry of the defendant wrongful. Several days prior to defendant's entry, the plaintiffs, then residing upon their claim, had commenced the construction of their fence to inclose the same. It is true they had not marked or designated their boundaries by any artificial monuments, beyond their fence, but it is equally true that the defendant had actual notice of the extent of their claim. The lines were pointed out to him by plaintiffs with reasonable accuracy, and we see no good reason why actual notice is not equally as good so far as bringing home to the defendant a knowledge of the plaintiffs' rights are concerned, as that afforded by stakes or like monuments. The plaintiffs, as already observed, proceeded to the completion of their fence with reasonable diligence. Having gone into the actual possession of a portion of the premises they were entitled to a reasonable length of time in which to inclose them. What this length of time should be must, for the most part, depend upon the particular circumstances and location of each claim. In this case, as we have already stated, it does not appear that the plaintiffs unnecessarily delayed the completion of their inclosure. Residing, then, upon or being in actual possession of a portion of the tract of land claimed by them, the right of possession of the entire tract so inclosed was vested in the plaintiffs. This possession dated from the time they entered upon and located the premises. It is not absolutely necessary in all cases, as was seen from the authorities above read, in order to entitle a party to the exclusive occupation and enjoyment of a land claim, segregated, as it were, by him from the public domain, that he should have first inclosed it by a substantial inclosure, although this is undoubtedly one of the highest evidences of actual possession. It may be evidenced by any appropriate and lawful use, according to the particular locality and quality of the property, and the purpose of the occupation. If a party were to locate and claim for agricultural purposes a tract of land, and were to reside upon, inclose, and cultivate a portion of the same, having artificial monuments sufficient to indicate generally the boundaries of the entire claim, this

would most certainly be a substantial compliance with the rule we have here laid down, and such possession of a part would draw after it the possession of the whole. A different rule from this would work an unnecessary hardship in a large majority of cases.

In looking over the testimony, therefore, in this case, we are necessarily brought to the conclusion that the plaintiffs were in the actual and exclusive possession of the premises in controversy at the time the defendant entered upon the same. This conclusion is strengthened by the conduct of the defendant himself at the time. He was not only shown by the plaintiffs the boundaries of the claim they were then asserting a right to, or dominion over, but he attempted to negotiate a purchase of an interest in this ranch from one of the claimants, thus recognizing, to some extent, their right of control over and interest in the same.

If we are correct in our construction and exposition of the law governing possessory titles, it follows that the court below erred in its finding as facts that the plaintiffs did not take possession of the premises set out in the complaint about the sixteenth of August, 1864, and were not entitled to the possession of the same at the time of the alleged ouster. These conclusions of fact are entirely unsupported by the evidence, or were, we might say, in direct opposition to it.

As this disposes of the case in this court it is unnecessary for us to inquire into the correctness of the rulings of the court on the trial to which exceptions were taken at the time. In fact, they have not been included in an assignment of errors, and we have just decided at this term in the case of *The People* v. *John C. Page,* that we will not scrutinize a voluminous transcript to ascertain whether the inferior court may possibly have committed some error to the prejudice of the complaining party, unless it shall first have been assigned as such.

Judgment reversed and a new trial awarded.