## ROBERT RILEY

*v.*

## HUGH QUIGLEY.

1. NOTICE BY POSSESSION—*its extent and effect.* Where a person is in possession of premises, upon which he holds a mortgage which is not recorded, the constructive notice of his rights under the mortgage which is afforded by his possession, in lieu of a record, only goes to the extent of putting persons upon inquiry, and requiring a subsequent purchaser to apply for information to the person in possession.

2. But if such information is honestly and properly asked on the one side, and willfully refused on the other, he who has done all in his power to acquire it, may deal with the land on the presumption that the title is in fact as disclosed by the record, and the party in possession will be estopped from setting up his mortgage to the injury of him to whom he refused the information.

APPEAL from the Circuit Court of Sangamon county; the Hon. EDWARD Y. RICE, Judge, presiding.

The facts in this case are fully presented in the opinion.

Messrs. J. C. & C. L. CONKLING, for the appellant.

Messrs. HERNDON & ZANE, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill to foreclose a mortgage, brought by Hugh Quigley against Robert Riley *et al.*, and the record discloses the following facts:

In August, 1862, Michael Quigley executed to Hugh Quigley a mortgage for $5,000. In July, 1863, Michael sold and conveyed the mortgaged premises to Robert Riley for $2,500, and received payment. At the time of this sale, Michael assured Riley there was no incumbrance on the lands, and referred him to the records. Riley employed an attorney to

examine the title, and he found no mortgage upon the record, but advised Riley, as the latter had heard Hugh Quigley claimed to have a mortgage, to inquire of him before purchasing, and for that purpose prepared the following notice:

" To Hugh Quigley:
    " Sir: I am making arrangements to purchase of Michael H. Quigley, the following described real estate, situated in Sangamon county, Illinois, viz.: [description of land follows, including the land mortgaged.] I understand you say you have a mortgage on said land, from said Michael H. Quigley, but I cannot find any mortgage on record. I am anxious to have the particulars of said mortgage, so as to determine whether it would be advisable for me to close my bargain with said Michael H. Quigley. He says he never executed a mortgage to you. I, therefore, request you to record your mortgage immediately, or send me a copy of it, or allow me to examine your mortgage within five days from this date. If you do not give me in some way, as specified above, a full statement of the particulars of your mortgage, and I shall purchase said land, I shall claim it without any regard to your mortgage, and hold the land unincumbered by your mortgage, provided you have any.

                                                his
" July 2, 1863.                    " ROBERT ⋈ RILEY.
                                              mark.

    " Witness, James C. Conkling."

Riley, taking with him one Rayburn as a witness, proceeded to the residence of Hugh Quigley, who was then living on the mortgaged premises, though in what capacity does not appear, and served the foregoing notice upon him. At this point, the evidence is contradictory. Riley swears Quigley told him there was no mortgage, and he would cane him off the place. Quigley testifies he said, in the presence of both Riley and Rayburn, that he had a mortgage, and then told Riley to leave

the place. The character of Quigley, for veracity, is impeached by several witnesses.

James Rayburn testified that he served the notice on Hugh Quigley, who became very boisterous, and told Riley to get off the premises or he would cane him. When Quigley and Riley commenced talking in that way, witness thought they were going to have a fuss, and started and walked away; what they may have said after he stepped away, he did not know. Does not recollect that Quigley said he had no mortgage on the farm. He ordered Riley off the premises. The language which Hugh Quigley used was after he read the notice, and is all the language witness recollects. Quigley did not use any language before the notice was read.

The testimony of Quigley, that he stated in the presence both of Riley and Rayburn, that he had a mortgage, is thus contradicted both by Riley and Rayburn, and the latter is a disinterested witness. It is true, as urged by counsel for appellee, that self-interest would have prompted Quigley to state that he had a mortgage, but it is equally true that self-interest would have dictated a full and explicit statement of the particulars of the mortgage, as requested by the notice, and even by his own testimony this he did not give. But whatever his own interest would have dictated, the case must be decided upon the evidence, and from this it is clear he treated the application of Riley as an insult, and drove him from the premises. It is probable there was ill feeling between them, as the record discloses that Quigley was soon afterwards arrested for an assault upon Riley, and if their relations were unfriendly, it is not so improbable as counsel seem to suppose, that Quigley refused the desired information, since it is very certain that he drove Riley from the premises by threats of violence. The entire testimony compels us to the conclusion that, for some reason, he was angry at being served with the notice, and instead of giving the information which Riley had a right to ask, treated him with contumely, and refused to satisfy him with regard to the mortgage.

What, then, were the rights of these parties? Riley was desirous of purchasing the land, and had employed an attorney in order to secure an unincumbered title. The record showed such a title in Michael Quigley, and the latter assured him the record spoke the truth. But either from rumor, or from the possession of Hugh Quigley, he had such information as to put him on inquiry, and make it his duty to apply to the latter in order to give him an opportunity to make known the exact nature of his claim. This he did, and thus discharged all the duties imposed upon him by the law. On the other hand, Hugh Quigley disregarded the requirements of the law at every step. He ought to have recorded his mortgage. This delinquency, however, the law excused if he was in possession under it, or if a person dealing with the land had information in regard to the incumbrance. The proof as to the character of the possession is not clear, but admitting all that can be claimed in that regard, and admitting what is undoubtedly true, that Riley had heard something of a mortgage, although assured by his vendor there was none, yet the law accepts this constructive notice in lieu of a record, only to the extent of putting persons upon inquiry, and requiring a subsequent purchaser to apply for information to the person in possession or to him who is said to hold the mortgage. The law says this is required by good faith, but it also must surely say, that if such information is honestly and properly asked on the one side, and willfully refused on the other, he who has done all in his power to acquire it, may deal with the land on the presumption that the title is in fact as disclosed by the record. It can never permit a person both to keep his mortgage from the record, and to refuse information in regard to it to one who has a right to apply, and does so in a proper manner. The mortgagee who does this must be held estopped from setting up his mortgage to the injury of him to whom he has refused the information. He has no right to withhold the information, and if he wantonly does so from one who is about purchasing the property, the plainest dictates of equity and good faith

require that as against such purchaser his mortgage shall lose its force.    *Wendell* v. *Van Rensellaer*, 1 J. C. R. 354; *Storrs* v. *Barker*, 6 ib. 167.

In the opinion of a majority of the court, the decree must be reversed and the cause remanded.

*Decree reversed.*