## BETTS v. LETCHER et al.

1. A referee, under the statute in force at the time of the trial of this cause, was an officer of the court for a specific purpose; that is, "to take testimony," "to ascertain a fact," or, it might have been, to hear and determine any or all the issues of fact in an action, and to report a finding of fact upon which a judgment could have been entered by the court. To determine the power of the referee, the object for which he was appointed, or the nature of the reference, must be continually kept in view.
2. The protection which the registry law gives to those taking titles or security upon land upon the faith of the records should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming this protection, and a clear equity in him who seeks to establish a right in hostility to such person. Slight circumstances, or mere conjecture, should not suffice to overthrow the title of one whose title is first on record.
3. Notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which would put a prudent person upon inquiry, impeaches the good faith of the subsequent purchaser.
4. Possession, in order to constitute notice, must be open and notorious, and prima facie is, of itself, sufficient notice; but this presumption, like

that arising from any other fact putting one upon inquiry, is subject to rebuttal by proof showing that an inquiry, duly and reasonably made, failed to disclose any legal or equitable title in the occupant.

5. The question of notice is one of fact, and is to be determined like any other fact.

6. Partners, in relation to each other, are trustees of the partnership property; and, whatever either one may do with that property, he acts in a fiduciary capacity, and all beneficial results from the use of that property or funds inure to the benefit of the partnership.

7. If real property be purchased with partnership means, and used for partnership purposes, it is treated in equity as held by the partners in trust for the firm, subject to the same rules as apply to partnership personal property. This is so whether the title be vested in one or all of the members of the firm.

8. A partner has a lien upon all the property of a firm, both real and personal, for the purpose of paying him any general balance which may be due him upon an accounting and dissolution of the firm, after all the firm debts are paid.

9. Exemptions of a partnership, under the law, belong to the firm, and are not several exemptions for each partner. Yet each partner is entitled to his several interest in the exemption, according to the number and interest of the partners, and, if one or more of the partners, at the time when he could demand and require the payment of the exemptions, waives his individual right to them, he is precluded from demanding them; and should the other partners demand their share of the exemptions before signing stipulation of settlement, and they are paid to them individually, they become their individual property, and not the property of the firm.

10. General exceptions are insufficient to make alleged errors reviewable in the appellate court. When the specific error is not clearly and distinctly pointed out in the record, it will not be considered in this court.

(Syllabus by the Court    Argued Feb. 10, 1890.  Opinion filed June 25, 1890.)

Appeal from district court, Davison county. Hon BART-LETT TRIPP, Judge.

Action for an accounting and to have a conveyance of real property declared void. Judgment for plaintiff. Defendant appeals. Affirmed.

The facts are stated in the opinion.

*Edgerton & Maclay,* for appellants.

The defendant, Matilda S. Letcher, is an innocent grantee. Wade on Notice, § 290; Smith v. Yule, 31 Cal. 180. As she is an innocent grantee, plaintiff should not be allowed to assert his title against her. Plaintiff is estopped from impeaching or contra-

dicting his own deed.    Wade on Notice, § 299; Van Kewan v. R.
R. Co. 38 N. J. Law 167; Bloomer v. Henderson, 8 Mich. 405;
Dawson v. Bank, 15 Mich. 496; Pope v. Allen, 90 N. Y. 302.
In order to charge notice upon an innocent purchaser of real
estate, the party charging must show an exclusive possession
in himself, and one inconsistent with the title of the apparent
owner by the record.    Brown v. Volkening, 64 N. Y. 83; Sedg-
wick and Wait, § 723. Hodges Exec'rs v. Ammerman, 2 Atl. 257;
McNeil v. Polk, 57 Cal. 323; Taylor v. R. R. Co. 8 Pac. 439.    A
partner cannot claim an exemption out of unsettled partnership
assets.    Thompson on Home. and Ex. § 196; Story on Partner-
ship, § 370; Rainey v. Nance, 54 Ill. 30; Levy v. Williams, 79
Ala. 171; State v. Emmons, 99 Ind. 452; Hoyt v. Hoyt, 69 1a.
174; Bates v. Callender, 3 Dak. 260; Robertshaw v. Hanway,
52 Miss. 713; Kingsley v. Kingsley, 39 Cal. 666; Amphlett v.
Hibbard, 29 Mich. 298; Bonsal v. Cowly, 44 Pa. St. 442; Russel v.
Lennon, 39 Wis. 570; Pond v. Kimball, 101 Mass, 105.    A grantor,
even in exclusive possession, is estopped by his own deed.
Koon v. Tramel, 62 N. W. 245; Sprague v. White, 35 N. W.
753; Stifler v. Ritzlaff, 11 At. 876.

   *Wynn* and *Nock* and *Gamble Bros.*, for respondent.

   Every partner has an equitable lien upon the entire firm
assets as a security that those assets shall be applied in the
discharge of the firm debts, and that he shall receive his just
share of the surplus remaining after all firm debts are paid.
This rule extends to real estate.    Pom. Eq. Juris. §§ 1243, 1421;
Pepper v. Thomas, 4 S. W. 297; Dyer v. Clark, 5 Met. 562.

   Proof of possession is presumptive proof of ownership.
1 Greenleaf Ev. § 34. Smith v. Lorillard, 10 Johns N. Y. 338;
Jackson v. Dunn, 5 Cow. 200; 2 Best on Evidence, § 366.    The
burden of proof was on the defendant, Mrs. Letcher, as against
the equitable owner to show she was a subsequent purchaser
in good faith and for value.    Brown v. Welsh, 18 Ill. 343;
Boon v. Chiles, 10 Peters, 211: Long v. Dollarhide, 24 Cal.
218; Lloyd v. Lynch, 28 Pa. St. 419; Kimball v. Fenner, 12 N.
H. 248.    The real property in question was in the open, ex-
clusive and notorious possession of the firm, and this was no-

tice to the world that the plaintiff, as a partner, had an equita-
ble interest therein.    Appellants seek to avoid this  conclusion
by claiming that plaintiff is estopped to impeach or  contradict
his own deed.    The simple fact of  possession is sufficient to
raise a presumption of interest in the  premises on behalf of an
occupant, and the law of constructive notice from such posses-
sion is the same whether it is a grantor  remaining in  posses-
sion after having made an absolute deed which is put on record.
Pell v. McElroy, 36 Cal. 268; Met. Bank. v. Godfrey, 23 Ill.
531; New v. Wheaton, 24 Minn. 406; Wright v. Bates, 12 Vt.
431; McKecknie v. Hoskins, 23 Me. 230.

BENNETT, J.   On the 3d day of February, 1882, Orlando R.
Betts, the plaintiff, and the defendant  George E. Letcher, en-
tered into an agreement looking to the establishment of a  co-
partnership for the sale of hardware at Mitchell, Dak.    By the
terms of the agreement, Betts agreed to convey to Letcher  lot
No. 12 in block No. 8, Mitchell, and Letcher was to build thereon
a business house, upon the completion of which Letcher was to
redeem to Betts half of the said lot upon the payment by  Betts
to him of one-half the cost price of said lot and the building so
erected, and to take the promissory notes of said Betts for  the
same, said notes to be for equal sums, due two, three, four and
five years from date, and to draw interest at the  rate of 8 per
cent per annum.   On the 13th day of February the above
named Orlando R. Betts and  George E. Letcher entered into a
formal copartnership, and  commenced doing  business under
the firm name of Letcher & Betts, at which  time Letcher had
contributed to the capital stock of  said firm the sum of $2,400,
and Betts the sum of $3,038.04, including the aforesaid lot  No.
12, valued at $1,000.    On or about September 22, 1882, a  store
building was completed on the lot No. 12; but as to whether it
was built by the individual funds of Letcher, as per agree-
ment, or in whole or in part by the funds of the copartner-
nership, is a part of, or one of, the questions in this contro-
versy.   Upon the completion, viz., September 22, 1882, this
building was taken possession of and occupied by the firm of
Letcher & Betts.   While said firm occupied, and were in  pos-

session of, said lot and building, on or about the 12th day of October, 1882, George E. Letcher, without the knowledge or consent of plaintiff, Betts, granted and conveyed unto the defendant, Matilda S. Letcher, the mother of George E. Letcher, and who was residing in Mitchell at the time, the said lot No. 12, block 8, in Mitchell, Dak. The copartnership bought heavily, and was indebted to various creditors for unpaid balances on the stock. During the existence of the copartnership, each copartner, from time to time, withdrew from the copartnership funds certain sums of money, and also made certain other contributions to the capital stock. On or about October 21, 1882, a warrant of attachment was levied upon the stock in trade of said firm, at the suit against it of certain alleged creditors thereof, together with, as is alleged, the individual property of George E. Letcher. November 2, 1882, Edward C. Curry was duly appointed receiver, and took possession of said stock of goods, etc. On the 29th day of November, 1882, by a stipulation duly entered into between the attaching creditors and Orlando R. Betts and George E. Letcher, all the partnership property of the firm of Letcher & Betts, both real and personal, and the other specific property in the hands of the receiver, was turned over to said creditors in satisfaction of their claims and demands against said partnership. By the terms of this stipulation, it was provided that nothing therein contained should in any wise affect the rights and equities, if any, of said Orlando R. Betts in said lot 12, block 8, in Mitchell, Dak., and the improvements thereon; nor were the accounts of George E. Letcher, George E. Letcher's store account, nor the account of Orlando R. Betts, nor the new building account, transferred in the settlement stipulation between the creditors and the firm of Letcher & Betts. On October 23, 1883, the plaintiff brought this action against George E. Letcher for an accounting, and against Matilda S. Letcher to declare the conveyance of George E. Letcher to her of lot 12, block 8, Mitchell, Dak., void, and that said lot should be made subject to the trust of the plaintiff. Each defendant answered separately.

When the cause came on for hearing, the court below is-

sued the following order: "O. R. Betts v. Matilda S. Letcher. et al. It is hereby ordered that Mrs. J. D. Washburn be, and she is hereby, appointed a referee to take the testimony in regard to the partnership differences set out in the complaint and answer in this action. By the court. A. J. EDGERTON, Judge." E. A. Maglone was afterwards substituted for Mrs. Washburn as referee. On the 6th day of November, 1886, the court issued the following order, appointing A. Haines as referee in the case: "Orlando R. Betts v. George E. Letcher, et al.     Order. And now, by the consent of the parties hereto, it is ordered that A. Haines be, and he is hereby, appointed referee in the above entitled action, to report his findings of fact and conclusions of law thereon; and, by consent of the parties hereto, it is further ordered that said cause be heard before said referee in the town of Parker, county of Turner, Dakota, and that said cause may be heard at any time upon ten days' notice to either party. Said referee shall be allowed the sum of ten dollars per day for his services. By the court. BARTLETT TRIPP, Judge."

Previous to the appointment of Haines as referee, and who made the final report to the court, it appears that Mrs. Washburn and E. A. Maglone, as previous referees in the case, had severally taken some testimony in the cause, but had not completed it. By virtue of the order above cited, the whole case was referred to A. Haines, Esq. Upon the trial before him, the referee received. against the objections of defendants, the depositions taken before the referees Mrs. Washburn and Mr. E. A. Maglone. The referee, after further hearing the case, made his report to the court. To this report the defendants filed specific objections, which were overruled, and a judgment was entered in accordance with the findings of fact by the referee. The defendant Matilda S. Letcher moved the court to have the judgment set aside so far as it relates to the declaration of a lien against lot No. 12, block 8; and the defendant George E. Letcher asked the court to modify and correct the judgment as to him, and moved for a new trial. These motions were respectively overruled, and both defendants appeal, making, in substance, the following assignment of errors: First, that the

referee Haines erred as to defendant Matilda S. Letcher, in admitting the evidence that had been taken before the referees Mrs. Washburn and E. A. Maglone; *second*, that the court erred in holding that the conveyance of George E. Letcher to his mother, Matilda S. Letcher, of lot No. 12, block 8, in Mitchell, was void by reason of her being charged with notice of the firm's possession of the property; *third*, that the referee Haines erred in not charging the plaintiff, Betts, with the $750 he received as his half of the firm's exemptions at the time of the settlement with the firm's creditors; *fourth*, that the referee erred in making his computation of the net amounts that the partners are entitled to out of the partnership property; *fifth*, that there was error in not allowing Letcher credit for individual property of his that he claims was attached, and that the firm's creditors took in their settlement with the firm.   And the transcript of the testimony was introduced, and received as evidence.   We will consider these alleged errors in their order.

*First.*   That the referee Haines erred, as against the defendant Matilda S. Letcher, in admitting the written evidence of witnesses taken before the former referees, Mrs. Washburn and E. A. Maglone.   The objections to the introduction of this testimony were (1) that the witnesses whose testimony purports to be therein set forth have never been produced under the present referee; (2) that the present referee has no authority to receive any testimony except such as is legally presented to him on this examination; (3) that the papers now presented purport to contain an examination of certain witnesses before another referee, and under an entirely different power and authority; (4) that the papers and purported testimony are entirely incompetent in substance, and in the manner and mode of taking the same; (5) that said exhibit purports to contain testimony which is not properly authenticated or certified; (6) that the certificate of the officer before whom the same purports to have been taken is insufficient, incomplete, and not in the mode provided by law; (7) that the officer before whom the same purports to have been taken never had any authority or power to take the same for the purpose for which they are

now attempted to be used; (8) that there is no sufficient evidence in the papers themselves to show that they have ever been taken to be used on the trial of this cause; (9) that said papers purport to have been taken for a specific purpose, which has been annulled and superseded by subsequent orders of this court; (10) that defendant Matilda S. Letcher, on her own behalf, interposes the further objection that the purported testimony was taken under an order and in a hearing in which she had no interest, and took no part.

The objection of defendant Matilda S. Letcher is based on the wording of the order appointing Mrs. Washburn and E. A. Maglone referees. It is claimed that these orders do not include Matilda S. Letcher, and that her case was not referred, and that only the partnership differences between Orlando R. Betts and George E. Letcher were so referred. It is true that the defendants George E. and Matilda S. Letcher answer separately; yet there was no order of court ordering a separate trial, nor was one asked for by either of the defendants. The facts show that the defendant Matilda S. Letcher recognized the validity of the reference as to her by appearing before both Mrs. Washburn and E. A. Maglone, and submitting her case to them, without objection as to their power to try it. Her objections went only to competency, relevancy, and materiality of testimony, and not the jurisdiction of these referees under the orders. If she had objected to this, a reference to the wording of the order appointing them would show that they were authorized "to take the testimony in regard to the partnership differences set out in the complaint and answer in this action." One of the differences set out was the transfer of title to the lot conveyed to defendant Matilda S. Letcher by George E. Letcher, the other defendant. This in fact was one of the main issues to determine; for, upon the determination of it, some $6,000 of alleged partnership funds was involved. If the sale of this real estate to defendant Matilda S. Letcher was fraudulent, she would be divested of her apparent title. If not, she would retain it. The next important partnership difference was the amount of the shortage, if any, of George E. Letcher to the firm, which

would be chargeable to the real estate.  In both these questions the defendant Matilda S. Letcher was vitally interested, and which differences really included the vital issues of the case. Under our code a reference may be ordered, upon an agreement of the parties, filed with the clerk or entered in the minutes, to hear and determine any and all issues of fact in an action or proceeding, and to report a finding upon which judgment may be entered by the court.  The finding so reported has the effect of a special verdict.  Comp. Laws, §§ 5071, 5077. . The reference in this case to Haines was by the consent of parties, and, by the order of court, he was to report findings of fact and conclusions of law; yet he only reported his findings of fact, which, under the statute at that time, was all he could do.  The reference to Mrs. Washburn and Mr. Maglone was only "to take testimony."  A large mass was taken by them under the orders appointing them referees.  Referees, like all other inferior and subordinate tribunals, in regard to their powers and jurisdiction, are mere creatures of the statute.  Their powers in that respect are special and limited.  In considering the power of a referee, the object for which he was appointed, or the nature of the reference, must be kept continually in view.  A referee, under our statute, is an officer of the court for a specific purpose; that is, "to take testimony," "to ascertain a fact," or, it may be, to hear and determine any or all of the issues of fact in an action, and to report a finding upon which judgment may be entered by the court.  The references in this case to Mrs. Washburn and Mr. Maglone were of the first class, viz., to "take testimony, to ascertain a fact."  In obedience to their powers, they did proceed to take testimony in the case, which, for the purposes of the case, was good in all branches of it. Afterwards another referee was appointed, with extended power—that is, to hear and determine all the issues of fact, and it was proper and right that the testimony taken in the same case, though by another referee, should be submitted to him for his final determination and report.  No error was committed by the court in holding that this objection was not well taken.

*Second.* That the court erred in holding that the convey-
ance by George E. Letcher to his mother of lot 12, block 8, in
Mitchell, Dak., was void; she being charged with notice of the
firm's possession of the property at the time of the alleged con-
veyance. The equitable interest of O. R. Betts, the plaintiff,
in the above mentioned lot, if any there is, arises by virtue of
the unrecorded agreement entered into by him and George E.
Letcher on the 3d day of February, 1882, which is as follows:
"This agreement, made and entered into this 3d day of Feb-
ruary, 1882, by and between O. R. Betts, of the village of
Mitchell, in the county of Davison and in the territory of Da-
kota, of the first part, and George E. Letcher, of Fayette, Ohio,
witnesseth, that the said party of the first part, for and in con-
sideration of the covenants and agreements on the part of the
said second party, by him to be kept and performed as herein-
after expressed, hereby agrees to deed the said second party
village lot No. 12, on block No. eight (8), in the village of
Mitchell, in the county of Davison, in the territory of Dakota,
free and clear of all incumbrance, within ten days from the date
hereof, and also agrees to sell and deliver to said Letcher,
and hereby does sell and deliver to said Letcher one-half
of his hardware stock, situated and being in said village of
Mitchell, which one half is to be invoiced and sold to said
Letcher at cost price in the city of Chicago, Ill., to which cost
price five per cent. is to be added for freight from Chicago to
said Mitchell. Said stock to be invoiced, and its value fixed, as
soon as said Betts returns to Mitchell, the agent of said Letcher
to help invoice the same. In part payment for the above men-
tioned hardware stock and lot, said Letcher is to sell and de-
liver to said Betts one-half of his livery stock situate at Fay-
ette, Ohio, which is to be put in good condition and varnished,
except where it has been done and painted before, if necessary.
Said one-half of said livery to be taken by Betts at the sum of
twelve hundred and fifty dollars, which is to be applied on the
cost price of said hardware stock and lot; and said Letcher is
to pay the freight on said livery stock so sold to said Mitchell,
except the sum of fifty dollars, which Betts is to pay. Said

Letcher is to build on said lot, during the season of 1882, a brick and stone block two stories high, ninety feet deep, and twenty-five feet wide, for a hardware store. When the block is completed, Letcher is to give to said Betts his contract to sell one-half of said lot and block at one half the cost price of said block and lot, and take the promissory notes of said Betts therefor, which notes shall be for equal sums, due two, three, four, and five years from date, and draw interest at the rate of eight per cent per annum, payable annually. When said notes are all paid, said Letcher is to deed to said Betts one-half of said lot and block. The livery stock, one-half of which is hereby sold to said Betts, is mentioned in the invoice attached hereto. Said Letcher is to pay for the above mentioned lot the sum of five hundred dollars. When the said block is completed, said parties are to put in a good hardware stock, and own the same in equal shares; and, for whatever stock Letcher puts in more than Betts, Betts is to pay him, or to secure to him the payment thereof, at eight per cent." The deed of George E. Letcher to Matilda S. Letcher, his mother, which the court below held to be void, was executed October 12, 1882, and filed for record on October 13, 1882.

The protection which the registry law gives to those taking titles or security upon land upon the faith of the records should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming this protection, and a clear equity in him who seeks to establish a right in hostility to such person. Slight circumstances, or mere conjectures, should not suffice to overthrow the title of one whose title is first on record. Our statute, however, says an unrecorded instrument is valid as between the parties thereto, and those who have notice thereof. Section 3297, Comp. Laws. As between the plaintiff and the defendant George E. Letcher, the above instrument was unquestionably valid; and by its terms he was bound to give to the plaintiff a bond for a deed for one-half of the lot in controversy at the time he attempted to convey it to his mother. Our Civil Code makes void a conveyance not recorded only as against a subsequent purchaser

of the same property, or any part thereof, in good faith, and
for a valuable consideration. Section 3293, Id. Every person
who has actual notice of circumstances sufficient to put a pru-
dent man upon inquiry as to a particular fact, and who omits
to make such inquiry with reasonable diligence, is deemed to
have constructive notice of the fact itself. Section 4743, Id.
The validity of the instrument as between the plaintiff and de-
fendant Matilda S. Letcher, therefore, depends upon whether
she had notice of its existence at the time of her alleged pur-
chase, and whether she was a purchaser in good faith, and for
a valuable consideration. Notice of a prior unrecorded con-
veyance, or of any title, legal or equitable, to the premises, or
knowledge and notice of any facts which would put a prudent per-
son upon inquiry, impeaches the good faith of the subsequent
purchaser. The record does not disclose, nor does the referee
find, that there was any evidence that the defendant Matilda S.
Letcher had any knowledge or notice of the existence of the
agreement between the plaintiff and the defendant George E.
Letcher in relation to this lot, except whatever notice is to be
presumed and derived from the possession of it by the firm of
Betts & Letcher at the time it was conveyed to her. All the
authorities agree that possession, in order to constitute notice,
must be open and notorious. The general rule, as laid down
in Pomeroy's Equity Jurisprudence, is as follows: "That a
purchaser or incumbrancer of an estate, who knows, or is prop-
erly informed, that it is in the possession of a person other than
the vendor or mortgagor with whom he is dealing, is thereby
charged with a constructive notice of all the interests, rights and
equities which such possessor may have in the land. He is put
upon an inquiry concerning the grounds and reasons of the
stranger's occupation, and is presumed to have knowledge of
all that he might have learned by means of an inquiry duly and
reasonably prosecuted. * * * Whenever a party dealing as
purchaser or incumbrancer with respect to a parcel of land is
informed or knows, or is in a condition which prevents him
from denying that he knows, that the premises are in the pos-

session of a third person, other than the one with whom he is dealing as owner, he is thereby put upon an inquiry, and is charged with constructive notice of all the facts concerning the occupant's right, title, and interest which he might have ascertained by means of a due inquiry." Sections 614, 615, and cases there cited. Daniel v. Hester, 29 S. C. 148, 7 S. E. Rep. 65; Veith v. McMurtry, 42 N. W. Rep. 6; Izard v. Kimmel, 41 N. W. Rep. 1068. This doctrine springs from the apparent, not the true, relation that the person in possession bears to the ·title. It rests upon the theory that actual and visible possession is a fact of such a character and notoriety as cannot properly escape the observation of a subsequent purchaser or incumbrancer, and is in its nature sufficient to put him on inquiry as to the rights of the possessor.

*Prima facie*, the possession is of itself sufficient notice, whether it is actually known to the other party or not; but this presumptive notice from possession, like that arising from any other fact putting one upon inquiry, is subject to rebuttal by proof showing that an inquiry, duly and reasonably made, failed to disclose any legal or equitable title in the occupant. Riley v. Quigley, 50 Ill. 304; Fair v. Stevenot, 29 Cal. 486; Williamson v. Brown, 15 N. Y. 354; Flagg v. Mann, 2 Sum. 486. A failure to make such inquiry, however, is regarded as an intentional avoidance of the truth which it would have disclosed; and voluntary ignorance, under such circumstances, effectually deprives the subsequent party of the character of a *bona fide* purchaser. Grimstone v. Carter, 3 Paige, 421; Flagg v. Mann, 2 Sum. 486, 554; Thompson v. Pioche, 44 Cal. 508, 516. Actual, open and visible possession of real estate is constructive notice to the purchaser of all rights of the possessor in the land. Such possession charges a purchaser with notice of all equities of him in possession. Bank v. Sperling, 113 Ill. 273; Staton v. Davenport, 95 N. C. 11; Ewing v. Burnet, 11 Pet. 54; Hughes v. U, S., 4 Wall, 236; Brown v. Volkening, 64 N. Y. 82; Pope v. Allen, 90 N. Y. 302; Ranney v. Hardy, 43 Ohio St. 159; 1 N. E. Rep. 523, and cases cited in this op nion Evans v. Templeton, 69 Tex. 375, 6 S. W. Rep. 843; Gress v

Evans, 1 Dak. 388. While the authorities are agreed that the possession must be actual, open and notorious, in order to constitute a notice, yet they are by no means agreed as to what facts, or character of facts will be sufficient to constitute the requisite notoriety. The grazing of sheep and cattle on land, and constructing and fencing around a tank of water thereon is not sufficient. Murphy v. Welder, 58 Tex. 235; Sanford v. Weeks, 38 Kan. 319, 16 Pac. Rep. 465. Nor is the mere cutting of timber thereon from time to time. Nor the use of a vacant lot for the occasional hanging out of clothes and the like. Nor the overflowing of land by stopping a water-course below on a different tract. Robinson v. Lake, 14 Iowa, 424. On the other hand, it is held that inclosure is not necessary when there are other appropriate acts of occupancy. Feirbaugh v. Masterson, 1 Idaho, 135; Ewing v. Burnet, 11 Pet. 53; Ellicott v. Pearl, 10 Pet. 442. The clearing an acre of land out of 60 acres of heavily timbered land, and renting it to a person residing on an adjoining tract, who cultivated it, is sufficient. Wickes v. Lake, 25 Wis. 71. The growing and cutting willows upon land every year, for basket making, is sufficient. Banner v. Ward, 21 Fed. Rep. 820. The running a plowed furrow around a tract of prairie land will suffice. Buck v. Holt, 74 Iowa, 294, 37 N. W. Rep. 377; The question then, of notice, is one of fact, and is to be determined like any other fact. Possession and knowledge thereof, will in ordinary cases be good proof of notice of the title under which the party in possession claims, and must rest upon the evidence produced in each case.

In the case at bar the referee reports that the evidence does not establish that Matilda S. Letcher had notice of the right of the partnership, or the rights and equities of Betts as one of the partners in the lot, except as to the fact of occupation by the firm of the lot and building upon it, The referee does, however, find, and so reports, that as early as March, 1882, Betts, the plaintiff, with the consent of Letcher, and in his absence, took charge of the erection of the building of the firm, contracted for lumber, and various kinds of work and material, all in the partnership name. The evidence also discloses

that when George E. Letcher, the other member of the firm, took up his residence in Mitchell, he then supervised the work. The referee further finds that in September, 1882, a month or more before the conveyance to Matilda S. Letcher, the firm of Letcher & Betts moved their entire stock into the store-room, and in the firm name leased the upper room for offices and lodging rooms, and continued in open, exclusive and notorious possession of the store-room in the prosecution of their business, and of the upper rooms by their tenants. There could have been no more open, exclusive and notorious possession, known to all the community, by Letcher & Betts, from the time the lot was conveyed to Letcher, in March, and while the building was being erected, during the entire season, and a full and complete possession of it after its completion, until the alleged conveyance to defendant, Matilda S. Letcher. She being a resident of Mitchell during all this time, and the mother of George E. Letcher, the grantor, it would be a great stretch of presumption to say that she did not know at the time of her alleged purchase that this lot was in the possession of the firm of Letcher & Betts; and, if she had such knowledge, she was put upon inquiry, and is charged with constructive notice of all the facts concerning the occupant's rights, title and interests at the time of purchase; and her title must be subordinate to the rights and equities of those in possession.

This conclusion leads us to the inquiry, what rights and equities had the firm of Letcher & Betts, or the plaintiff Betts, to lot 12, block 8, in the town of Mitchell, Dak., on October 12, 1882? George E. Letcher, in both his original and amended answers, admits that Betts, the plaintiff, contributed the lot, which was valued at the time at $1,000, to the capital stock of the copartnership. It was taken up and held as a part of the partnership assets. It is true it was conveyed by Betts, the original owner, to Letcher, at the time of forming the copartnership. For what purpose the conveyance was made, does not appear, nor is it material; for the subsequent written agreement shows that it was to be used upon which to erect a store building for the use of the firm, "and, when the block is

completed, Letcher is to give to said Betts his contract to sell one-half of said lot and block at one-half the cost of said block and lot, and take promissory notes of said Betts therefor, which notes shall be for equal sums, due two, three, four and five years from date, and draw interest at the rate of eight per cent per annum, payable annually. When said notes are all paid, said Letcher is to deed to said Betts one-half of said lot and block."

It may be well to examine the general law as to the relations and rights of partners. These have been fully defined by our Code. "The relations of partners are confidential. They are trustees for each other, within the meaning of Chapter 1 of the title on 'Trusts.' Their obligations as such trustees are defined by that chapter." "In all proceedings connected with the formation, conduct, dissolution and liquidation of the partnership, every partner is bound to act in the highest good faith towards his copartners. He may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." "Each member of a partnership must account to it for every thing that he receives on account thereof." Sections 4036–4038, Comp. Laws. It will thus be seen that partners, in relation to each other, are trustees of the partnership property, and, whatever either one may do with that property, he acts in a fiduciary capacity, and all beneficial results from the use of that property or funds inure to the benefit of the partnership. Pom. Eq. Jur. §§ 587, 1049. The property of a partnership consists of all that is contributed to the common stock at the formation of the partnership, and of all that is subsequently acquired thereby. The share of each partner in the partnership property is the value of his original contribution increased or diminished by his share of profit or loss. Sections 4030–4032, Comp. Laws. In this case, Betts' original contribution was of the value of $3,038.04, as found by the referee and agreed to in the articles of copartnership. Of this amount, $1,000 was the lot in question. The general balance due to him at the time of the dissolution, on his account, is found to be $1,701.59.

This, we say, was the value of his original contribution.   His "share of profit" is one-half of the increase in the value of the real property, which is found to be worth $3,500, or an increase of $2,500 over its estimated value when put into the partnership, one-half of which is $1,250, making $2,951.59 due to Betts upon the dissolution of the firm, after all debts had been paid.   Section 4034, Id., says: "Each member of a partnership may require its property to be applied to the discharge of its debts, and has a lien upon the shares of the other partners for this purpose, and for the payment of the general balance, if any, due to him."   In Pepper v. Thomas, 4 S. W. Rep. 297, the rule as to partnership real property is thus stated:  "If real property be purchased with partnership means, and used for partnership purposes, it is treated in equity as held by the partners in trust for the firm, subject to the same rules as apply to partnership personal property, and liable to the debts of the firm, and the claims of the partners *inter se*; and this is so whether the title be vested in one or all of the members of the firm."   A leading case in Massachusetts is Dyer v. Clark, 5 Metc. 562.   The action there was one by a surviving partner of the firm of Dyer & Burleigh, against the administrator, widow and heirs of Burleigh, deceased.   In the statement of the case, it appears that $732 was found due the plaintiff on the accounting.   The partnership was insolvent, unless the proceeds or a part thereof, of the real estate, and the rents that had accrued, should be applied to liquidate the partnership accounts, and adjust the balance due to the plaintiff, as surviving partner. from said deceased partner's estate.   Chief Justice SHAW, in deciding the case, says: "The principal question," etc., "is whether real estate purchased by copartners from partnership funds to be held, used and occupied for partnership purposes, is to be deemed in all respects as *real estate*   *   *   *   to vest in the partners severally as tenants in commom   *   *   *   or   *   *   * whether,   *   *   *   as *quasi* personal property,   *   *   *   to be. held and appropriated   *   *   *   first to the liquidation and discharge of partnership debts,   *   *   *   and payment of the amount due, if any, to the surviving partner, before it shall go

to the widow and heirs.   *   *   *   Each [partner] is under a conscientious obligation to hold that real estate until the purposes for which it was so purchased are accomplished, and to appropriate it to  *   *   *   the payment of the partnership debts, for which both are liable, and until he has come to a just account with his partner.   It follows," concludes the court, "as a necessary consequence, that such partnership real estate cannot be conveyed away or alienated by one of the partners, alone, without a breach of such trust, and that such a conveyance would not be valid against the other partner unless made to one who had no notice, actual or constructive, of the trust. But if a person knows that particular real estate is the partnership property of two or more, and he attempts to acquire a title to any part of it from one alone, without the knowledge or consent of the others, there seems to be no hardship in holding that he takes such title at his peril, and on the responsibility of the person with whom he deals."   In Howard v. Priest, 5 Metc. 585, it was held that partnership real estate is a trust-estate, in regard to partners—"*First*, for the payment of the debts of the firm; and, *secondly*, for the restoration to himself, on settlement of the partnership account, of that part of the capital which has been contributed by him to the common stock."   The law, then, seems to be clear that it matters not whether the property of a firm consists of personal or real property.   A partner has a lien upon all of it for the purpose of paying him any general balance which may be due him upon an accounting and dissolution of the firm.   The court below, therefore, did not err in so decreeing.

*Third.*   It is claimed that the referee erred in not charging the plaintiff, Betts, with the $750 he received as his half of the firm's exemptions at the time of the settlement with its creditors.   The twenty-seventh finding of the referee is as follows: "That Orlando R. Betts, before signing the said stipulation for turning over the partnership stock in satisfaction of the claims of the attaching creditors, which in its terms contains no reservation as to exemptions, insisted upon the payment to him by the creditors, as the transferees of the assets of the

firm under stipulation, of the sum of $750 as his share of the statutory exemptions of the firm, which sum was accordingly paid to and received by him. The defendant George E. Letcher at the time waived his right as a member of the firm to his statutory exemptions. The referee, considering that the question as to whether said Betts is chargable with said $750 in the accounting between partners involves a question of law, does not pass upon it, but finds the facts as aforesaid." The records disclose the fact that the assets of the firm of Letcher & Betts were in the hands of a receiver for the benefit of creditors. In this condition of affairs, all the creditors desired and offered to settle with the firm by taking the property in the hands of the receiver for their claims in full. Letcher, one of the partners, wan anxious to make the settlement in this way, without making any claim to any exemption he or the firm might have under the law. Betts, however, insisted on his half of the exemptions, and refused to settle until paid the $750 by the creditors. In the stipulation for settlement, no mention is made of exemptions, and nothing said about the $750 paid to Betts; and, as this stipulation for settlement must be taken as the basis upon which the settlement was effected, the question of exemptions cannot be taken as the legal consideration upon which the property in the hands of the receiver was sold by the firm to the creditors. Whatever separate inducement may have been offered either member of the firm to have signed the settlement stipulation cannot be considered now, as between Letcher and Betts as individuals, in their settlement. If either one was not satisfied with the terms of the settlement with creditors, it should have been made known before signing the stipulation. The only reservation made in the stipulation was: "Understood and agreed to, that this stipulation shall in no wise affect the rights and equities, if any, of said Orlando R. Betts in and to lot 12, block 8, in Mitchell, Dakota, and the improvements thereon. The accounts of George E. Letcher, George E. Letcher's store accounts, O. R. Betts, and new building account, are not included among the accounts transferred in the foregoing stipulation." At the time of settlement with the

creditors, there can be no doubt that either member of the firm, or the firm, might have demanded the statutory exemptions to which they were entitled. Either partner could waive his portion of the exemptions, or either could demand his part of it. By the findings of the referee, it is shown that Letcher waived his part of the exemptions before signing the stipula- tion. He cannot now come in, and demand one-half of those which were given to Betts. There would have been some plausi- bility to this position had Betts, as a member of the firm, de- manded the full amount of exemptions to which the firm was entitled, and received it; but this was not the case. He only wished for, and received, his share of them. And Letcher, the other member of the firm, not demanding the full amount of the firm's exemptions, but waiving his individual half of them, cannot now be heard to demand them of Betts, or any portion of them, which were paid to him. The firm was entitled to $1,500 of exemptions, under the law, of their creditors; but the time to demand them is when the property is taken to satisfy the creditors' demands. It is true the exemption belongs to the firm, and is not a several exemption for each partner; yet each partner is entitled to his several interest in that exemption, ac- cording to the number and interest of the partners, and if one or more of the partners, at the time when he could demand and require the payment of the exemption, waives his individual right to the exemptions, he is precluded from demanding them; and should the other partners demand their share of an exemp- tion before signing stipulations of settlement, and they are paid to them individually, they become their individual property, and not the property of the firm.

The *fourth* alleged error is that the referee made an error in making his computations of the net amount that each partner is entitled to out of the partnership property. The referee finds in an accounting that there is due plaintiff from the firm of Letcher & Betts $1,701.59, and that lot 12 in block 8 in Mitchell, exclusive of improvements, was worth $3,500, one- half of which sum of $3,500 to-wit, $1,750. added to the $1,- 701.59, makes $3,457.59, for which sum Betts is given judgment.

In this computation we think there was error. It is apparent that, all through the accounting of the referee, he has given Betts, the plaintiff, a credit of $1,000 in his capital stock, which $1,000 was the value of lot 12, block 8, the same lot upon which the lien has been declared; and this value enters into the general finding on that accounting, and helps to make up the sum of $1,701.59 as the balance due Betts. As to the real estate that was thus contributed to the general partnership fund, Betts is only entitled to his share of the increased value of it. The referee finds this value to be $3,500. The increased value, therefore, would be $2,500. Betts and Letcher being equal partners, each could only claim one half of this increase, which would be $1,250, to which add the $1,701.59 found due Betts in the general accounting outside the lot, making the sum of $2,951.59. Again, the referee has found that, in the accounting between the partners, George E. Letcher is entitled to a net credit from the firm of Letcher & Betts of the sum of $109.82; and, inasmuch as Betts has been allowed the full amount of his net credit in the general accounting, Letcher is entitled to have this amount deducted, or credited upon this lien in his favor, leaving $2,841.77, and for which the lien should have been declared by the court below.

*Fifth.* That there was error in not allowing Letcher credit for individual property of his that was attached, and that the firm's creditors took, in their settlement with the firm. To determine whether there was error or not in this particular, it becomes necessary to know what the terms of the settlement were. By reference to the settlement agreement, we find it to be as follows: "And whereas, the attaching creditors of said firm are willing to accept the personal property belonging to said partnership, including the notes, accounts and credits of said partnership, and the notes and securities of F. M. Dunham, $1,015.00, and interest held by said firm, together with all the interest of said partnership in a certain tract or lot of land situated in the village of Mitchell, known as 'Lot 11, Block 9,' in the village of Mitchell, D. T., held by said firm under a bond for a deed given by one Duncan, in full satisfaction of their

claims and demands against said firm: Now, therefore, it is hereby agreed by the said Orlando R. Betts and George E. Letcher, parties of the first part, and the undersigned attaching creditors of said firm of Letcher & Betts, who signed this agreement, parties of the second part, as follows: The parties of the first part, and each of them, hereby sells, assigns and transfers to said parties of the second part, and consents that the said receiver may sell, assign, transfer and deliver unto them, subject to the approval of the court, all the personal property belonging to said partnership as aforesaid, together with all their interest in said real estate known as 'Lot 11, Block 9,' in the village of Mitchell; that the receiver be allowed to retain, out of the proceeds of property sold, all his fees, costs and expenses in the discharge of his trust, and in making sale of the property sold; that all notes, accounts and credits belonging to said firm, and hereby transferred, are so transferred and received subject to all just credits, payments and offsets; that the parties of the second part, and every of them, do hereby receive and accept said property hereby transferred to them in full account and satisfaction of all and every of their several demands against said firm, and of all costs of suits, and agree to give proper acquittances and releases in full of all such demands and costs, and dismiss all suits against the parties to said partnership, upon the surrender to and receipt of said property by them." It will thus be seen that Letcher & Betts sold, assigned, transferred and delivered to their creditors "all the personal property belonging to the partnership, together with all their interest in lot 11, block 9, in the village of Mitchell," in consideration for proper acquittances and releases in full of all the demands which their creditors might have against them, and the payment of all costs that had been made, and the dismissal of all suits begun against them. Under the terms of this agreement, neither Letcher nor Betts were required to give to their creditors any of their individual property. It was only partnership assets that were to be assigned and transferred; and, if either one allowed the creditors to take property of his, not the property of the firm, by reason of

this agreement, it could in no way affect the rights of the other. Every rational man is supposed to know what his rights are, and, with full knowledge of their being infringed upon by others, is expected to assert them at the time of the infringement. If not, his acquiescence is considered as tantamount to a relinquishment of them. The evidence shows that the property claimed to be taken was never partnership property, was never bought by the firm, never mingled with the goods and stock of the firm, never stored or handled in the same building occupied by the firm; and, if attached and held by the creditors. it was so attached and held as the property of George E. Letcher, and not the property of the firm. If so, they had no right to it under the settlement agreement; but it was the duty of Letcher to have claimed it, and not Betts, because he had no interest therein.

But, so far as this alleged error is concerned, neither of the defendants can be heard, as no exceptions were filed to either the findings of the referee or the court below upon this branch of the case. The alleged general exceptions are clearly insufficient to make them reviewable in this court. They point to no specific error, and such an exception is entirely useless verbiage; and, if it calls upon the court to perform any duty in regard to it, it is to try the case over, upon the facts, upon the pleadings and proof. This court is called upon to perform no such duty. This has been so often repeated that it is useless to cite authorities on the proposition.

For the error in the computation of the amount due plaintiff, Betts, the cause is remanded, with directions to the court below to modify the judgment by striking out the words, "and also one-half the present value of the real property belonging to the partnership, described as lot twelve (12) of block eight (8), in the village of Mitchell, in said county of Davison, in the complaint mentioned, found to be worth thirty-five hundred dollars, one-half the present value thereof being the additional. sum of seventeen hundred and fifty dollars, and that, as security for the payment of this general balance so adjudged to be due to him in the aggregate amount of three thousand four

hundred and fifty-one and 59-100 dollars, the plaintiff has, and is hereby adjudged and declared to have and hold a lien upon said real property," and in lieu of them inserting the following words: "And also one-half the increased value of the real property belonging to the partnership described as lot twelve (12) of block eight (8), in the village of Mitchell, in said county of Davison, in the complaint mentioned, found to be worth twenty-five hundred dollars, one-half the increased value there of being the additional sum of twelve hundred and fifty dollars, from which deduct the sum of $109.82, the amount of Letcher's net credit; and as a security for the payment of this general balance so adjudged to be due to him, in the aggregate amount of twenty-eight hundred and forty one 77-100 dollars, the plaintiff has, and is hereby adjudged and decreed to have and hold, a lien upon said real property." And, as so modified, the judgment is affirmed. One-half the costs in this court to be paid by each party.