WHITFORD, et al., Respondents, v. DODSON, et al., (STEVENS, Appellant.)

(181 N. W. 962.)

(File No. 4709.   Opinion filed March 21, 1921.)

1.   Vendor and Purchaser—Rescission—Land Exchanged and Conveyed for Other Land Under Vendor's False Representations, Whether Grantee's Instanter Grantee An Innocent Purchaser—Inadequate Money Consideration and Worthless Lots, Whether Evidence of Complicity by Second Grantee in Exchange Transaction—Plaintiffs' Equity.

Where plaintiffs, an illiterate Indian husband and wife, with very limited understanding of the English language, were induced by a co-conspirator of the owner of 400 acres of land worth not more than $3.00 to $6.00 per acre located in another state, and the latter, to exchange and convey their land worth with improvements $6,400 to $7,200, they relying wholly upon the representations made; grantees of plaintiffs' land having on the same day executed a deed of reconveyance of the land, but leaving his grantee's name in blank, defendant's name being inserted therein on the following day when his transaction with his grantor was consummated, for a recited consideration of $6,500, grantee giving his check for $2,500, the balance being paid by conveyance of two acres of land never seen by the

original conspirators, who had no knowledge of its character or value, and there being no evidence concerning same save what was told them by the grantor thereof, and no evidence that any representations were made concerning its value; **held,** that plaintiffs' equity appears beyond all doubt, they being defrauded of their property, and are entitled to recover against conspirators' vendee, unless he was equally imposed upon by them.

2.    **Same—Grantee of Realty Acquired Through Fraud—Suit For Cancellation of Deed, Registry Laws as Defense, Rule—"Clear Equity," in Plaintiff, Bad Faith of Defendant, Burden of Proof Re.**

The extent to which the registry laws of this state protect one acquiring title to realty on the strength of the record, is (following Betts v. Letcher, 1 S. D. 182) that the protection given thereby to those taking title or security on land on the faith of the records should not be destroyed or lost except upon clear evidence showing want of good faith in party claiming protection, and clear equity in him seeking to establish a right in hostility to such person; that slight evidence, or mere conjecture, does not suffice to overthrow title of one whose title is first recorded; and burden of showing that "clear equity" in them that would entitle them to recover in absence of good faith on part of record-title holder, is upon the parties seeking to set aside such recorded conveyance, as also to show such lack of good faith.

3.    **Same—Rescission, Cancellation, by Defrauded Party—Plaintiffs' Subsequent Possession as Evidence of Continuing Interest—Their Want of Knowledge of Being Defrauded, Effect Re Possession As Notice—Estoppel.**

The rule relative to knowledge imputed to purchaser of realty by occupancy thereof by a person other than grantor is, (folloing Betts v. Letcher, 1 S. D. 182) that actual, open and visible possession of realty shall be constructive notice to purchaser of all rights of possessor in the land, which possession charges purchaser of notice of all his equity; which rule applies where grantor remains, after delivery of his deed, in possession of the premises; under which circumstances a purchaser may not give controlling prominence to the legal effect of the possessor's deed, nor disregard the fact of grantor's retention of possession; nor is such possessor as grantor estopped by his deed.    So **held,** where, after defrauded parties had, by reason of the fraud, exchanged and conveyed land for other land, but had not given up possession until after a deed to the present claimant had been executed by the conspirators, and recorded; this notwithstanding at the time of execution and recording of

the second deed, such defrauded parties had not learned that the land they received in exchange was comparatively worthless and not as represented; the evidence showing that the present claimant had knowledge that some parties were in possession and made no inquiry.

4.  **Same—Defrauded Grantor, Continued Possession By, Whether Consistent With, or Hostile to, Title Conveyed—Rule, Qualification of Re; Bona Fides of Purchaser.**

The rule that where a party in possession of realty has recently executed and permitted to be recorded a deed conveying all his right, title and interest therein, such possession is presumed to be consistent with, not hostile to, the title conveyed, is qualified by the condition that one purchasing from a grantee whose grantor is still in possession must be an innocent bona fide purchaser, and must have purchased under such circumstances as constitute him an innocent purchaser free from any collusion with fraud upon the apparent vendor and grantor, who remained in possession; that if a fraud had been perpetrated, and the facts and circumstances are such as to put purchaser on inquiry and create reasonable ground for believing a mistake was made or a fraud perpetrated, he cannot avail himself of said rule; and the facts appearing in this record bring the case within the rule; the fact that plaintiffs' grantee filed his deed for record, had abstract brought down to date, executed and acknowledged deed of conveyance with grantee's name in blank, all on the day he acquired his title, are acts of preparation and indicate an intention to dispose of the property at earliest moment; to which the feature of disparity of consideration should be added, in connection with the fraudulent grantor was willing to accept less than one-third the value of the land for it; in view of which facts defendant in a suit to cancel such deed cannot be held to have been acting in good faith, nor to have been an innocent purchaser; in law his conduct was fraudulent and collusive; and his conduct and that of his grantor amounts to a fraud upon the present plaintiffs, who are entitled to recover against defendant-appellant.

Whiting and McCoy, J. J., concurring in the result.

Appeal from Circuit Court, Tripp County. Hon. William Williamson, Judge.

Action by Josephine DuBray Whitford, and Charles Whitford, against G. A. Dodson and T. F. Stevens, to cancel a deed to realty. From a judgment for plaintiffs, and from an order denying a new trial, defendant Stevens appeals. Affirmed.

*Doherty & Talbott,* for Appellant.

*W. J. Hooper,* for Respondents.

(2) To point two, Appellants cited Pomeroy's Eq. Jur. Secs. 614-15, and cases cited; Betts v. Letcher, 1 S. D. 182.

Respondent cited: Hingeten v. Thackery, et al., 23 S. D. 329.

(3) To point three, Appellant cited: Bank v. Sperling, 113 Ill. 273, and cases cited; 39 Cyc. p. 1753; Krause v. Krause (N. D.) 151 N. W. 991.

Respondent cited: Henderson v. Nunamaker, 49, U. S. App. 174 S. C. 25 C. C. A. 181; Sheerer v. Cuddy, 24 (Cal.) Pac. Rep. 713; Letcher case, supra.

POLLEY, P. J. This is an action brought to cancel a deed to a quarter section of land in Tripp county. The plaintiffs, Charles Whitford and Josephine Whitford, are husband and wife. Josephine Whitford is a member of the Rosebud Band of Sioux Indians, and the land in question had been allotted to her and patent issued by the United States government under the General Allotment Act (24 Stat. 388.) Whether she had ever attended school does not appear from the record, but it does appear from her testimony that her use and understanding of the English language is very limited. Charles Whitford appears to have had but little, if any, education or business experience. At and for some time prior to the execution of the deed in question the plaintiffs, together with their two small children, were occupying the land as their homestead. During the latter part of April, 1918, defendant Dodson and one Panek, since deceased, called upon the said Charles Whitford at his said home and made a proposition to him to trade to plaintiffs 400 acres of land owned by Dodson in Cherry county, Neb., for plaintiffs' said homestead. They represented to plaintiffs that the Nebraska land was good agricultural land; that it was all level; that there was a good four-room frame house on it; that there was a telephone in the house; that there was a schoolhouse within a half mile of the land; that there was a good barn and windmill; that the place was all fenced and cross-fenced with three barb wires; and that the land was worth $7,600. They also represented to said plaintiffs that they had a purchaser for said land who was ready to purchase the same for $7,600 in cash. They offered to take plaintiffs down into Cherry county and show them the land, and a few days thereafter Panek did take Charles Whitford to Cherry county, Neb., and there showed him a piece of land that answered the description they

had given him of Dodson's land and told him that that was the land owned by Dodson, and which Dodson wanted to trade to the Whitfords for their land. Whitford was satisfied with the land shown him, and on the 1st day of May, 1918, the plaintiffs went to the town of Witten, a few miles from their land, where they met Dodson, and a trade was consummated by an exchange of deeds to the respective pieces of land.

On or about the 14th day of May following the above transaction Charles Whitford again went to Cherry county, Neb., and on looking up the land described in his deed found that it was not the land that had been shown him by Panek. The land described in the deed is situated in what is known as the Sand Hills of Nebraska, and was a piece of poor, rough, sandy land, none of it fit for agricultural purposes, and not worth to exceed $3 to $6 per acre, and they had no purchaser for the land who was willing to purchase it at any price. The representations made by Panek and Dodson, except as to the quantity of the land, were wholly false, and such false representations, together with the act of Panek in showing Whitford the wrong piece of land, were but the carrying out of a deliberate prearranged scheme to cheat and swindle the Whitfords out of their land.

Immediately after learning the facts, the Whitfords executed and tendered to Dodson a deed reconveying the Nebraska land to him and demanded that he reconvey their land to them. This Dodson refused to do, and in fact was unable to do, for the reason that he had already conveyed the title to the land to defendant Stevens.

Having procured the land under circumstances that entitled the Whitfords to recover the same, had he retained the title himself, Dodson made all haste to convey the title to another. He placed his deed from the Whitfords on record the day it was received by him. On the same day he had the abstract of title brought down to date, showing himself to be the owner of the land. He also on the same day made out, and he and his wife executed, a deed to the land, leaving the name of the grantee blank. On the following Saturday, May 4th, he met the defendant Stevens at a Hotel in Winner. Stevens was a real estate man from Creston, Neb. Neither of them had ever seen the other before, but they struck up an acquaintance and Dodson immediately

opened up negotiations for the sale of the Whitford land.  On the following day, which was Sunday, Dodson took Stevens out and showed him the land.  They actually went upon the land, or at least they both testified they did, but did not go near enough to the house to see whether it was occupied or not, and both of them testified that they did not see any one on the land, and did not see any stock grazing there at that time.  Dodson, of course, knew the Whitfords were living on the land, for it was there that he and Panek found Whitford when they first proposed the trade. On the following day Dodson delivered the deed, which he had already prepared and executed, and which had been acknowledged on the 1st day of May to Stevens.  This deed recited a consideration of $6,500.  Of this amount Stevens gave Dodson his check for $2,500.  The balance of $4,000 was paid by the conveyance to Dodson of two acres of land in the town of Creston, Neb. It does not appear that Dodson had ever seen this land, or that he had any knowledge of its character or value other than what had been told him by Stevens during the negotiations leading up to the trade; and whether Stevens represented this land as being of any value, the record is silent; and whether it actually had any value at that time, the record is equally silent.  When Stevens was on the witness stand, he was asked what was the value of the land on the 6th day of May, 1918, but he evaded the question and did not fix any value at all at that time.  The Whitford land at that time was worth $6,400 to $7,200.

Immediately after Dodson's refusal to reconvey the land, plaintiff's commenced this action.  Findings of fact, conclusion of law and judgment were for plaintiffs, and Stevens alone appeals.

[1]  Appellant makes no attempt to justify or excuse the methods that were employed by Dodson and Panek to swindle the Whitfords out of their land.  In his brief appellant freely admits the fraud that was practiced by Dodson and Panek, and for a defense relies wholly upon the protection of the registry laws of this state.  Under the law of this state, if he purchased the land for a valuable consideration, without knowledge of the fraud that had been practiced on the Whitfords, and without knowledge of facts or circumstances sufficient to put an ordinarily prudent man upon inquiry as to the manner in which Dodson procured the land, then he must prevail, and the Whitfords' only

remedy is an action aginst Dodson to recover the damage they have suffered.

[2]    The extent to which the registry laws of this state will protect a party who acquires title to real property on the strength of the record was very fully considered by this court in Betts v. Letcher, 1 S. D. 182, 46 N. W. 193. In that case it is said:

"The protection which the registry law gives to those taking titles or security upon land upon the faith of the records should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming this protection, and a clear equity in him who seeks to establish a right in hostility to such person. Slight circumstances, or mere conjectures, should not suffice to overthrow the title of one whose title is first on record."

This is a concise and correct statement of the rule to be applied in cases such as this, and it places upon the respondents in this case the burden of showing that "clear equity" in them that would entitle them to recover in the absence of good faith on the part of appellant, and also to show such lack of good faith on the part of appellant.

Upon the question of respondents' equity, that so clearly appears that there is no room for doubt. They were defrauded of their property by Dodson and are entitled to recover against appellant, unless appellant was equally imposed upon by Dodson.

[3]    Respondents rely largely upon the fact that they were living upon the land at the time of the conveyance from Dodson to Stevens, and that such occupancy at that time imputes to Stevens notice of their equity in the premises. The rule relative to the knowledge imputed to the purchaser of real property by the occupancy of such property by a person other than the grantor is stated in Betts v. Letcher, supra, as follows:

"Actual, open, and visible possession of real estate is constructive notice to the purchaser of all rights of the possessor in the land. Such possession charges the purchaser with notice of all equities of him in possession."

See, also, Adams v. White, 40 Okl. 535, 139 Pac. 514.

In Groff v. State Bank, 50 Minn., 234, 52 N. W. 651, 36 Am. St. Rep. 640, opinion by Mr. Justice Mitchell, where the

identical question here involved was under consideration, the court say:

"The only question in this case is whether this rule applies where the grantor remains, after the delivery of his deed, in possession of the granted premises. This is a question upon which the authorities are not agreed. Some cases hold that the deed is conclusive that the vendor has reserved no interest in the land; that having, in effect, so declared by his conveyance, he is estopped from setting up any secret arrangement by which his grant is impaired; that, although he remains in possession, a person seeking to obtain an interest in the premises has a right to assume, without inquiry, that he is in possession merely for a temporary purpose, as tenant at sufferance of his grantee. But it seems to us that, inasmuch as the law allows possession to have the effect of notice, there is no good reason for making a distinction between possession by a stranger to the record title and possession by the grantor after delivery of his deed. In either case the possession is a fact inconsistent with the record title, and, if possession by the stranger is sufficient to make it obligatory upon a purchaser to ascertain his right, possession by the grantor is a circumstance entitled to equal consideration. An absolute deed divests the grantor of the right of possession as well as of the legal title, and when he is found in possession after delivery of his deed it is a fact inconsistent with the legal effect of the deed, and is suggestive that he still retains some interest in the premises. Under such circumstances, a purchaser has no right 'to give controlling prominence to the legal effect of the deed,' in disregard of the other 'notorious antagonistic fact,' that the grantor remains in posessession just as if he had not conveyed. To say that the grantor is estopped by his deed is begging the question; for, if his possession is notice to third parties of his rights, there is no principle of estoppel that would prevent him from asserting against purchasers or creditors any claim to the premises which he might assert against his grantee. This view is abundantly sustained by authority. See Devl. Deeds, §§ 761-765; note to Le Neve v. Le Neve, 2 Lead. Cas. Eq. pt. 1. p. 180 et seq.; Pell v. McElroy, 36 Cal. 268. In fact this court has already adopted it in New v. Wheaton, 24 Minn. 406. This disposes of the only questions in this case, and the result is that the judgment is affirmed."

The weakness of respondents' case under this rule is, of course, the fact that at the time appellant was on the premises on the 5th day of May, respondents had not, so far as the record shows, learned of the fraud that had been perpetrated upon them, and it is altogether likely that, had appellant inquired of them at that time as to their interest in, or claim upon, the premises, they would have told him that they had no interest in and made no claim thereto. They might by their own disclaimer, had the opportunity been given them, have so far misled appellant as to the true situation, had there not been other circumstances to put him on guard, as to have estopped themselves from asserting their equitable claim.

[4] The rule that, where the party in possession has recently executed and permitted to be placed upon record, as was done by the Whitfords in this case, a deed whereby they had conveyed away all their right, title, and interest in the premises, then such possession will be presumed to be consistent with, and not hostile to, the title so conveyed, is very lucidly stated in Koon v. Tramel, 71 Iowa, 132, 32 N. W. 243.

But this latter rule is qualified by the condition that—

One who purchases from a grantee whose grantor is still in possession "must be an innocent, bona fide purchaser, and that he must have purchased the land under such circumstances as will constitute him an innocent purchaser, and free him from any collusion with fraud upon the person who was apparently the vendor and grantor, who remained in possession." Hass v. Gregg, 52 Okl. 51, 152 Pac. 1126.

And again in the same case, quoting from the syllabus in Smith v. Phillips, 9 Okl. 297, 60 Pac. 117, the court say:

"If a fraud has been perpetrated, and the facts and circumstances are such as to put the purchaser upon inquiry, and to create reasonable ground for believing that a mistake has been made or a fraud perpetrated, he will not be able to avail himself of the above rule."

[5] The facts appearing from the record bring the case within this rule. The fact that Dodson filed his deed for record, had his abstract of title brought down to date, and executed and acknowledged a deed of conveyance, leaving the name of the grantee blank, all on the same day that he acquired his title, are all

acts of preparation, and indicate an intention to dispose of the property at the earliest possible moment. In addition to these facts is the disparity of the consideration. The deed recited a consideration of $6,500. This is probably about the fair valuation of the land at that time; yet Dodson, in his haste to dispose of the same before the Whitfords discovered the fraud that had been perpetrated upon them, was willing to accept $2,500, a little more than a third of its value, for it. True, he got two acres of land in Creston, Neb., but it does not appear that this land had any value at all at that time.

In view of the foregoing conduct on the part of the appellant and Dodson, appellant cannot be held to have been acting in good faith, nor to have been an innocent purchaser, and in law his conduct was fraudulent and collusive. As was said in Hass v. Gregg, supra, the disparity in the consideration alone is sufficient to upset the theory that appellant was a bona fide purchaser.

The conduct of appellant and Dodson amounts to fraud and collusion for the purpose of obtaining the Whitford land for a fraction of its value, and the Whitfords are entitled to recover against the appellant.

This is a case where the registry law of this state is being used by a brace of crooks in the perpetration of a gross fraud. There is no question but that Dodson and Panek deliberately planned to rob the Whitfords of their land, and that the means they employed in accomplishing their purpose constituted a penal offense for which they ought both to be in the penitentiary. Panek is dead, and, of course, cannot be prosecuted, but the evidence indicates that Dodson is still within reach of the court, and the facts as they appear to us warrant a criminal prosecution against him before such prosecution is barred by statute of limitations.

The judgment and order appealed from are affirmed.

WHITING, J., concurs in result.

McCOY, J., (concurring.) Fraud in procuring the execution of a deed may be of such a nature as to amount to a forgery, in which case the recording laws will be no protection. 2 Devlin on Deeds, §§ 726, 762, 763. The fraud in this case related to the consideration, and not to the execution of the deed. The respondents knowingly intended to execute this instrument as a deed of conveyance; it was not a forgery. The recording laws may or

may not be a protection to one who is a purchaser where the fraud relates only to the consideration. If he is a purchaser for value without notice of existing equities in favor of third parties, generally he will be protected by the recording laws; otherwise not. I am of the opinion, for the reasons stated, that the recording of the Dodson deed furnished no protection to Stevens under the circumstances of this case. Stevens was not an innocent purchaser for value without notice as against the respondent Josephin Dubray Whitford, who was the owner in fee of the South Dakota land.

It appears from the record that the land in question, the subject-matter of the deed sought to be declared void, was the Indian allotment of Josephine DuBray Whitford, and that some five months prior to the execution of the deed to Dodson she had received final patent from the United States. This final patent no doubt removed the restriction against alienation. Notwithstanding this final patent Mrs Whitford still remained a ward of the nation. This final patent was placed on record on the 1st day of May, 1918, the same day the deed to Dodson was executed and recorded. The record of this final patent notified Stevens that Dodson was dealing with an Indian ward when he procured the execution of the deed to him. A ward is defined to be one who stands in a like position to a minor child—one who is subject to the relationship of guardian and ward. Federal decisions seem to hold that Indians as a class, being like children, although adults, are wards of the nation, who are entitled to legal protection in courts of equity, not accorded to the ordinary adult citizen. It is one of the general duties enjoined upon all courts of equity to safeguard and carfully scrutinize the holiness and fairness of all transactions with infants, minors, widows and orphans, and other persons who are the subject of wardship. In a certain sense such persons are general wards of the chancery courts when their rights are before such courts for determination. Bispham, § 443. The abstract of title having notified Stevens that Dodson in acquiring his deed had dealt with an Indian ward of the United States who was still in possession of this land, it then became his duty to inquire into the good faith and fairness of the transaction; to inquire into the consideration that Dodson gave for his conveyance to him. If he had made such inquiry, he would

have ascertained that Dodson by deception and by false and fraudulent representations had induced the Whitfords to accept a deed for an equity in lands in Nebraska for their lands in South Dakota; that no fair or adequate consideration in fact had passed to the Whitfords for the said deed to Dodson. I am of the opinion that one who deals for land with one who has acquired his title from an infant or ward or other person standing in a like situation is bound to make inquiries as to the fairness of the transaction with the ward before he can hide behind the recording laws as an innocent purchaser for value without notice.

I therefore concur in the opinion of POLLEY, P. J.