BUTTE COUNTY, Respondent, v. GAVER ex ux., Appellants

(49 N. W.2d 466)

(File No. 9174. Opinion filed October 9, 1951)

Rehearing denied November 13, 1951

**Smiley & Clark,** Belle Fourche, for Appellants.
**Lem Overpeck,** Belle Fourche, for Respondent.

RUDOLPH, P. J. By this action Butte County seeks to be declared the owner of 3.5 acres of land, comprising a gravel pit. The trial court determined that the county is the owner of the land and defendants have appealed.

The county bases its claim of ownership upon the following facts: The land in dispute is a part of a ranch which in 1944 was owned by the William A. Mitchell estate. The county had from time to time purchased from the Mitchells land for gravel pits located within the confines of the ranch. In 1944 the county desired additional land from which to obtain gravel, and through Mr. Matter, County Highway Superintendent, made an oral agreement with Clyde A. Mitchell, agent for the Mitchell heirs, for the purchase of the land in dispute which adjoins the other land owned by the county and purchased from the Mitchells. After this agreement was made the county commenced removing gravel from this land by continuing on from the old pit and during the years 1944, 1945 and 1946 a large quantity of gravel was taken from this new pit. In February, 1945, Clyde Mitchell, as agent for the Mitchell heirs submitted to the county a voucher for the agreed purchase price of this land. This voucher has endorsed thereon the approval of the Board of County Commissioners as follows: "Approved by the Board of County Commissioners, Mar. 7, 1945. Ole Thornby, Chairman Board of County Commissioners." Thereafter warrant was issued and paid, and the Mitchell estate received the full purchase price of the land. Mr. Matter testified that there was attached to the voucher a slip with the words "Hold for Deed", however the voucher on its face has his written approval, and in any event was approved by the Board and the money paid. The county continued its possession and removal of gravel. Apparently some confusion and misunderstanding arose between Mr. Matter and the then State's Attorney over the preparation of the deed transferring the title to the county, and no deed was executed prior to the deed from the Mitchells to the defendants, hereinafter referred to.

The defendants base their claim to the land upon a deed from the Mitchells dated April 17, 1947, which conveyed to the defendants the Mitchell ranch, and specifically excluded certain land deeded by the Mitchells to the county, but failed to exclude the 3.5 acres here in dispute. The circumstances leading up to the giving of this deed are as follows: The defendants were desirous of purchasing the ranch and in December 1946 went to the place and with one of the Mitchells drove around the ranch. There was snow on the ground which confined the inspection trip to the highways. The old gravel pit is clearly distinguishable from the highway, and a witness for the county testified that the new pit, which is an extension of the old, was also apparent. The defendant testified that the new pit could not be seen from the road. However, when the contract for the sale of the ranch from the Mitchells to defendants was prepared it contained the following: "That it is understood and agreed between the parties that a certain portion of the real estate heretofore described has been sold to Butte County for a gravel pit site, * * *" The contract was executed in January 1947 with this reservation in favor of the county for its gravel pit site. The defendant, Earl E. Gaver, testified that after the execution of the contract he examined the records in the office of the Register of Deeds and found a deed signed by Mitchells conveying 7.8 acres of land to the county.

It appears that the old gravel pit is bounded on the north by an alfalfa field. The defendant testified that in the summer of 1946 "I saw the alfalfa there in that field." This alfalfa field is 16 acres in extent and includes the 3.5 acres here in dispute. Approximately one-half acre of the 3.5 acres had been excavated and gravel removed. H. R. Mitchell testified that sometime subsequent to the signing of the contract and before the delivery of the deed he had a conversation with Earl Gaver and pointed out to him the general location of the county land in the alfalfa field. He testified:

"A. Well the conversation that would bear on this was in regard to the hay on the place and I told Earl I would try to get everything off of the bottom lands and the hay on the west side of the river. I told him one stack was on Coun-

ty land and I would see that the other was moved even if I moved it on County land, but the other stack I had no intention of moving at that time.

"Q. And that was on the land involved in this lawsuit? A. Yes.

"Q. And at that time you not only showed him all of the lines on the old gravel pit but on the gravel pit involved in this case? A. Yes, sir.

"Q. And that was when you told him that you would move the hay so it would be off of his land? A. Yes.

"Q. And you told him then that you would move the hay on to the land of the County? A. I told him that I would move the north stack that was on his land even if I never moved it any further than the County land. I told him the south stack was on County land and I wouldn't move it."

Clyde Mitchell testified that before the deal with the Gavers was completed he told Earl Gaver that the county line was "north of that first hay stack." Earl Gaver denied that either H. R. or Clyde advised him concerning the location of the county line.

The deed conveying the land to the Gavers excepted from the land conveyed only the land shown in the office of the Register of Deeds as being conveyed by the Mitchells to the county, which is the site of the old gravel pit only.

Two questions are presented. First, did the county, prior to the deed to defendants, acquire an equitable interest or title in this land under the facts above presented? Second, if the county did acquire such right, can it be successfully asserted against the defendants in this action?

It is our opinion that the county did acquire a right to this land prior to the deed to the defendants. The county was in possession, had paid the full purchase price and the fact that no deed was executed was due only to the delay caused by the misunderstanding which arose between the engineer and the states attorney. That the county was entitled to receive a deed from the Mitchells seems to us to be beyond dispute. The county had power originally to purchase the gravel pit site, and although the contract by the

County Highway Engineer for its purchase was unauthorized the County Board could ratify such contract. This it did by going into possession and removing gravel from the land and approving the voucher for the purchase price. 14 Am.Jur., Counties, Sec. 45; Stockwell v. City of Sioux Falls, 68 S. D. 157, 299 N.W. 453. We do not believe the cases of Brown County v. Zerr, 67 S. D. 516, 295 N.W. 289 and Boyd v. Lake County, 72 S. D. 431, 36 N.W.2d 384, have any application to facts here presented. Under this record the voucher for the purchase price was regularly approved by the Board of County Commissioners, acting as a board, and there is no contention here made or any basis upon which this court might determine otherwise.

It is our further opinion that the right of the county in this land can be asserted against these defendants. At the time the defendants entered into the contract to purchase the ranch they had made no examination of the records in the office of the Register of Deeds. The rights of the parties were fixed by this contract and any examination of the records after the execution of the contract could neither act as an inducement for the purchase by the defendants or create in them any equity which reason or justice should recognize. As set out above the contract expressly excepted from the land purchased by defendants the land which had theretofore been sold to Butte County for a gravel pit site. That the land here involved had been sold to Butte County has been established. Butte County at the time of the execution of the contract was the equitable owner of the land and defendants by the express terms of the contract took subject to the county's rights.

■■■ We do not believe the execution of the deed and the failure to except this 3.5 acres from the land transferred thereby in any way changes the rights of the parties. The record discloses that there was no intention of the parties to execute the deed other than in conformity with the contract. In addition to this fact the trial court found that the defendants had notice of the county's equitable title in this land. We believe this finding is supported by the record. It is the contention of the defendants that they knew only of the old gravel pit, and believed the rights of the county ex-

tended only to the old pit. However, the testimony above set out, which the trial court was privileged to believe, clearly refutes this claim. According to this testimony the defendants were advised that the land of the county extended over into the alfalfa field "north of that first hay stack." It is true that the exact lines of the land of the county were not indicated but Earl Gaver knew, as disclosed by his own testimony, that the old pit extended only to the south line of the alfalfa field. So at the time of the execution of the deed, in any event, defendants had notice of rights of the county in land other than that of the old pit, and were not therefore entitled to protection as bona fide purchasers. Whitford v. Dodson, 44 S. D. 12, 181 N.W. 962; Russell v. Elliott, 45 S. D. 184, 186 N. W. 824, 22 A.L.R. 556. A purchaser of real estate takes subject to outstanding equitable interests in the property, which are enforceable against him to the same extent they are enforceable against the vendor, where the purchaser is not entitled to protection as a bona fide purchaser. 55 Am.Jur., Vendor and Purchaser, Sec. 651.

Having concluded that the county had an equitable interest or title in this 3.5 acres, and that the defendants were not bona fide purchasers, the trial court then held that the defendants held this land impressed with a trust in favor of the county and ordered conveyance to the county. This holding is supported by authority and reason. 55 Am. Jur., Vendor and Purchaser, Sec. 408.

The judgment appealed from is affirmed.

ROBERTS, J., dissents.

SICKEL, J., dissents by opinion.

SMITH and LEEDOM, JJ., concur.

SICKEL, J. This case was originally assigned to me and the opinion which I submitted for approval was as follows:

This is an action brought by Butte county as plaintiff against Earl E. Graver and Grace A. Gaver, his wife, for the purpose of quieting title to 3.5 acres of land in Butte county. The William A. Mitchell ranch in Butte county consists of about 1200 acres of land. The various tracts are lo-

cated in three different sections but are all contiguous. After the death of William A. Mitchell the ranch was distributed to his seven children by decree of the county court. At some time, not material here, either William A. Mitchell or his heirs conveyed to Butte county 7.8 acres near the west side of the Southeast Quarter of the Northwest Quarter of Section 24 which the county desired for its gravel deposits. In the fall of 1944 Clyde Mitchell, one of the Mitchell heirs, made an oral agreement with V. F. Matter, then county highway superintendent of Butte county, to the effect that the Mitchell heirs would sell and convey to Butte county an additional 3.5 acres adjacent to and on the north side of the original tract, for a consideration of $700. A voucher for $700 was prepared and signed by Clyde Mitchell. The board of county commissioners suggested that the voucher, when so signed, should be held for the deed. Pursuant thereto the highway superintendent attached to the voucher a written slip of paper on which was written "Hold for deed", and it was so delivered to the county auditor or the board of county commissioners. The approval of the voucher was signed by the chairman of the board. Thereafter the county auditor issued a warrant dated March 7, 1945, for the amount of the claim to Clyde Mitchell, agent for the Mitchell Estate. The warrant was marked "paid" March 10, 1945, without the endorsement of the payee and the county treasurer's check of $700 was issued, payable the same as the warrant. The check was endorsed by Clyde Mitchell, agent, and cashed by the bank on which it was drawn. The highway superintendent made the survey, prepared the metes and bounds description of the 3.5 acre tract about the month of April 1945, and supplied the state's attorney with it. There is a conflict in the evidence as to when the description of the land was delivered to the state's attorney for the drafting of the deed, but no conveyance by any of the Mitchell heirs to the county was ever made or attempted except a quit claim deed executed by "Clyde A. Mitchell Agent W. A. Mitchell Estate" dated December 20, 1948.

On January 20, 1947, the Mitchell heirs, including Clyde Mitchell, as vendors, entered into a written contract to convey the ranch to defendants. This contract provided "That

it is understood and agreed between the parties that a certain portion of the real estate heretofore described has been sold to Butte county for a gravel pit site * * *". Gavers went into possession of the ranch on or about March 1st, 1947. The Mitchell heirs conveyed the ranch to Gavers by deed dated April 17, 1947. That deed excepted a 7.8 acre tract in the Southeast Quarter of the Northwest Quarter of Section 24, but this exception did not include the 3.5 acre tract involved in this controversy and referred to above. The county stripped about a half acre of the new tract before the sale of the ranch was made to Gavers. The county crusher stood in the old pit but the county took no gravel out of the 3.5 acre tract in the year 1947. In the summer of that year the county set up a new crusher in the new pit and it was then that Gaver ordered the county to take no more gravel from the new pit. The county highway superintendent was so notified. No further attempt was made by the county to remove gravel until the fall of 1948 when they were again stopped by Gaver. It was apparently at about this time that the county authorities discovered that they had never received a deed to the 3.5 acre tract from the Mitchell heirs. They then obtained a quit claim deed, dated December 20, 1948, describing the 3.5 acre tract, which deed was signed by Clyde A. Mitchell Agent W. A. Mitchell Estate. This action was commenced February 3, 1949. The circuit court decided that the quit claim deed, executed by Clyde A. Mitchell on December 20, 1948, conveyed no title or interest in the land to Butte county; that the 3.5 acre tract is the property of Butte county and that the title thereto is held in trust for the county by defendants.

Appellants contend that the oral contract of sale was void under the statute of frauds. Certainly the agreement related to an interest in real property. It was not in writing, signed by any parties to be charged nor by their duly authorized agent in writing and none of the owners of the property were bound thereby. Neither was the contract binding on the county. The board of county commissioners, not the county highway superintendent, had sole power to purchase on behalf of the county property containing gravel suitable for constructing and repairing highways. SDC 28.1302. The

board of county commissioners speaks through its record, and no record of any official action by the board authorizing or ratifying the purchase of this land is shown in this case. The claim signed by Clyde Mitchell for $700 was endorsed by the chairman of the board as approved, but this does not constitute an official record of the action of the board of county commissioners and does not evidence an agreement by the board to purchase the property in controversy. Boyd v. Lake County, 72 S. D. 431, 36 N.W.2d 384.

There is no evidence to show that Gavers were informed that the county claimed any part of the ranch which had not been already conveyed to it. Neither is there any evidence to show that Gavers were ever given a description of either the tract conveyed to the county or the 3.5 acre tract not conveyed, before the contract between the Mitchell heirs and Gavers was made or before the deed from the Mitchell heirs to Gavers was executed and delivered. Gavers knew in advance that the county owned gravel lands inside the ranch, but they were never informed as to the acreage until they accepted the deed from the Mitchell heirs, excepting 7.8 acres by metes and bounds description. It also appears from the evidence that Gavers never saw the 3.5 acre tract involved here and did not know that any part of it had been previously stripped by the county. H. R. Mitchell testified that after the contract of sale by the Mitchell heirs to Gavers had been executed and delivered he showed Gaver just about the line where the gravel pit would be. He testified further that this conversation took place between the two center buildings in the farmyard. Neither he nor Gaver went near the gravel land on that day. Just how Mitchell could show Gaver the lines of this 3.5 acre tract from between the two farm buildings at that distance, he does not attempt to explain. It further appears from the evidence that there were no lines marking the north boundary of the 3.5 acre tract. It was in an alfalfa filed. The only line on the north side of the gravel area was a fence marking the north side of the 7.8 acre tract. The only markings ever placed on the ground to show the north boundary of the 3.5 acre tract consisted of two hub stakes two inches by two inches and eighteen inches in length, driven one foot into the ground by the

county highway superintendent when he surveyed the tract in 1944 or 1945. One of these stakes was at the northwest corner of this tract and the other at the northeast corner near the river. When Matter, the highway superintendent, visited the area with Gaver late in 1947 or early in 1948 to show him the boundaries, the hub stake on the northwest corner had disappeared. After H. R. Mitchell testified, counsel for plaintiff stated to the court that it was plaintiff's position regarding the failure of the county to obtain a deed from Mitchells to the 3.5 acre tract that this failure was not noticed by the county officials or the Mitchell heirs until Gavers had taken possession of the ranch, and when the county engineer went to get gravel. The county first went for gravel after the delivery of the Gaver deed. In other words, all the parties concerned assumed that the county's ownership was a matter of record; that the recorded deeds showed the county's interest in the ranch; that the whole transaction between the Mitchell heirs and the Gavers was conducted on this basis. The Mitchell heirs received $700 from the county for this 3.5 acre tract, but never conveyed it to the county. They later sold and conveyed it to the Gavers as a part of the ranch. The county's claim, if any, is against the Mitchell heirs rather than against Gavers.

It is still my opinion that the judgment of the circuit court should be reversed for the reasons above stated.