1998 SD 119

David VANDERWERF, Harry Vanderwerf, and Betty Vanderwerf, Plaintiffs and Appellants,

v.

James P. KIRWAN, James T. Kirwan, William P. Kirwan, Shirley M. Kirwan, Defendants,

and

Gerald R. Kirwan, Jr., Leona J. Kirwan, and First Trust National Association, Defendants and Appellees.

No. 20325.

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1998.

Decided Dec. 9, 1998.

Paul E. Jensen, Jensen and Massa, Winner, for plaintiffs and appellants.

Michael F. Marlow, Johnson, Heidepriem, Miner, Marlow and Janklow, Yankton, David A. Domina, Domina Law, Omaha, for appellees G.R. and Leona J. Kirwan.

Jerry L. Wattier, Riter, Mayer, Hofer, Wattier & Brown, Pierre, for appellee First Trust.

GILBERTSON, Justice.

[¶ 1.] This action arises out of a real estate transaction. The Vanderwerfs brought suit against the Kirwan Ranch Partners (Part-

ners), Gerald and Leona Kirwan (Gerald and Leona) and First Trust National Association (First Trust) seeking to have a real estate transfer set aside. The circuit court for the Sixth Judicial Circuit, Gregory County, granted summary judgment in favor of Gerald and Leona and First Trust. The Vanderwerfs appeal. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] In March 1991, Robert and Eva Matthews (the Matthews) sold and conveyed the property known as the Kirwan Ranch Property to the Kirwan Ranch, a South Dakota partnership and David L. Vanderwerf (David) as tenants in common for the purchase price of $192,000.00. The general partners of Kirwan Ranch are James T. Kirwan (Jim), Jim's spouse Shirley M. Kirwan (Shirley) and their sons James P. Kirwan (JP) and William P. Kirwan (Willie).

[¶ 3.] At the time of the conveyance, the Partners and David executed a mortgage to the Matthews for $123,000.00. This mortgage was later assigned to First United Bank of O'Neill, Nebraska. Also, to facilitate the purchase of the property from the Matthews, Harry (Harry) and Betty (Betty) Vanderwerf and their son David provided a total of $83,300.00. Harry and Betty requested that only David's name appear on the deed. David was obligated to pay his share of the mortgage to the Matthews.

[¶ 4.] From 1993 to 1995, the Kirwan Ranch Partners experienced financial difficulties. In an attempt to alleviate this situation, Jim asked an attorney to prepare a quit claim deed from David to the Partners. On September 6, 1995, Willie on behalf of the Partners asked David to execute the quit claim deed. David was assured the deed would not be recorded, but instead would be used to satisfy the concerns of Yankton bank so that it would make a loan to the Partners. In actuality the Yankton bank had not made any request that David quit claim his interest in the property. David was assured that when the bank lent the money, the Partners would buy-out David's interest in the land. David agreed to sign the quit claim deed that day and did so.

[¶ 5.] Contrary to what David had been told by Willie, and without his knowledge, the quit claim deed was recorded on the same day it was signed. No corrective instruments were ever recorded by the Vanderwerfs or the Kirwan Ranch Partners. Then, again without David's knowledge, the Kirwan Ranch Partners entered into a contract to sell the property to Gerald and Leona Kirwan.[1] The contract was executed, notice of the contract was filed, initial funds were paid and the deed was signed and placed in escrow on December 12, 1995. Gerald and Leona, as was required for closing, executed a mortgage on the property to First Western Bank, NA, which the same day assigned the mortgage to First Dakota National Bank of Yankton. The mortgage was then assigned to First Trust. The deed for the Kirwan Ranch Property was recorded on April 15, 1996. Gerald and Leona did not have any notice of the arrangement between David and the Kirwan Ranch Partners when they entered into the agreement.

[¶ 6.] Approximately one to two months after he signed the quit claim deed, David learned of the contract to sell the property. The Vanderwerfs subsequently retained the services of an attorney. In an attempt to settle the dispute between the parties, the Vanderwerf's attorney arranged a meeting between his clients and the Kirwan Ranch Partners.[2] On December 29, 1995, the parties entered into an agreement wherein Kirwan Ranch would secure financing within sixty (60) days and would reimburse the Vanderwerfs for their investment. If the Kirwan Ranch could not secure financing, the property was to be re-conveyed to David. Sixty days passed and the Kirwan Ranch Partners neither obtained financing nor re-conveyed the land to David.

---

1. Gerald Kirwan is the first cousin of Jim Kirwan. Gerald and Leona live in O'Neill, Nebraska. James T. and Shirley Kirwan reside in Bristow, Nebraska. David Vanderwerf lives in Spencer, Nebraska and the realty in question is located in Gregory County, South Dakota, which borders Nebraska.

2. Gerald and Leona were not notified of this meeting and were unaware of this agreement.

[¶ 7.] On April 5, 1996, the Vanderwerf's lawyer wrote a letter to Gerald Kirwan alleging David Vanderwerf's claims. It arrived on April 7 or 8, 1996, one week after closing and four months after the contract was recorded. In the letter the Vanderwerfs threatened a lawsuit to enforce their rights in the property. This was the first notice Gerald and Leona had of the claims of the Vanderwerfs.

[¶ 8.] On May 16, 1996, the Vanderwerfs brought suit against the Kirwan Ranch Partners, Gerald and Leona and First Trust. The Vanderwerfs sought to set aside the alleged fraudulent transfer and void claims to the property by Gerald, Leona and First Trust. The trial court found that as to Gerald and Leona and to First Trust there was no genuine issue of material fact and granted summary judgment. It found First Trust was a mortgagee in good faith and for value. It concluded that Gerald and Leona had received an absolute conveyance of the property that reserved no other interest and they were bona fide purchasers for value and without notice.

[¶ 9.] The Vanderwerfs appeal raising the following issue:

Whether the trial court erred in the grant of summary judgment for Gerald, Leona and First Trust.

## STANDARD OF REVIEW

[¶ 10.] Our standard of review of a trial court's grant of a motion for summary judgment is well-settled. As we recently stated in *Estate of Shuck v. Perkins County*:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990).

The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1998 SD 32, ¶ 6, 577 N.W.2d 584, 586 (citations omitted).

## ANALYSIS AND DECISION

[¶ 11.] **Whether the trial court erred in the grant of summary judgment for Gerald, Leona and First Trust.**

[¶ 12.] In review of a motion for summary judgment, we will affirm if no genuine issue of material fact exists. SDCL 15–6–56(c). We draw all reasonable inferences in favor of the nonmoving party, the Vanderwerfs. Even viewing the facts in a light most favorable to the Vanderwerfs, Gerald and Leona and First Trust are entitled to judgment as a matter of law.

[¶ 13.] SDCL 44–8–12 states:

When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than ... *persons having actual notice*, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the register of deeds of the county where the property is situated.

(Emphasis added). David's quit claim deed was an absolute conveyance that neither reserved an interest in the land nor was accompanied by any instrument of defeasance. Under SDCL 44–8–12, the only means by which David's interest could be effective as to Gerald and Leona or First Trust was if the parties had actual notice of his interest.

[¶ 14.] The Vanderwerfs allege the trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether Gerald and Leona and First Trust had actual notice of David's claims. The trial court found that Gerald, Leona and First Trust did not have actual notice. This decision was based on the fact

that the Vanderwerfs did not bother to record any claim of their interest after David's unconditional quit claim or raise the issue of their interest when the contract for sale was signed and notice of the contract was filed of record with the Gregory County Register of Deeds. In addition, David learned of the contract to sell sometime in December of 1995.[3]

[¶ 15.] The Vanderwerfs contend Gerald and Leona had actual notice from the letter their attorney sent on April 5, 1996.[4] However, by that time the deed had been deposited in escrow, Gerald and Leona had given a down payment, title insurance had been issued in an amount of $690,000.00 reflecting fee simple title in the sellers and the transaction was near completion. On April 1, 1996, prior to receipt of the letter, a substantial balance of the purchase price of $690,000 had been paid or had been committed to be paid.[5] The only acts that had not been completed on April 8, 1996, when the letter was received, were an actual filing of the warranty deed that was done on April 15, 1996, and the payoff of Kirwan Partnership debts assumed by Gerald and Leona under the December 12, 1995 contract as part of the purchase price.

■ [¶ 16.] As for Gerald and Leona, we agree with the trial court, they did not have actual notice of David's possible interest. There is no evidence of communication between the Vanderwerfs and Gerald and Leona prior to April 7 or 8, 1996. Also, there is

no proof that Gerald and Leona knew of the fraudulent scheme between David and the Kirwan Ranch Partners. When Gerald and Leona learned of David's interest, it was too late. They had already performed under the contract and had parted with value. We stated in *Whitford v. Dodson*, under the law of this state, if

[a person] purchased the land for a valuable consideration, without knowledge of the fraud that had been practiced ... and without knowledge of facts or circumstances sufficient to put an ordinarily prudent man upon inquiry as to the manner in which [the seller] procured the land, then he must prevail, and the [defrauded parties] only remedy is an action against [the wrongdoer] to recover the damage they have suffered.

44 S.D. 12, 17–8, 181 N.W. 962, 964 (1921). Under this authority, the Vanderwerf's remedy is against the Kirwan Ranch Partners.[6] They cannot obtain relief at the expense of innocent parties. Summary judgment for Gerald and Leona was proper.

[¶ 17.] The Vanderwerfs admit that First Trust had no notice as to the fraud.[7] Therefore, summary judgment is also proper as to the First Trust.

■ [¶ 18.] The relief sought by the Vanderwerfs goes against laws respecting the reliability of recorded realty titles. We established early in our state's history, the extent to which the laws of this state will

---

3. Sometime in December 1995, an unknown person left a copy of the notice of contract at David's place of employment.

4. According to Gerald and Leona this letter was received on April 7 or 8, one week after the closing. This was four months after the notice of the contract for deed was recorded on December 12, 1995.

5. On or before April 1, 1996, Gerald and Leona had paid Kirwan Partners $1,000 as part of the contract, transferred $270,000 worth of their stock in K+ Angus Ranch, Inc. to the Partners, paid $4,400 for a bank handling fee, an appraisal fee of $3,117.77 and a title insurance premium of $2,633.50. Under the contract for deed with the Partners, Gerald and Leona had also obligated themselves to assume debts of the Partners in the amount of $291,302.85 to a bank and $97,047.20 to the Matthews.

6. The trial court entered judgment on behalf of Vanderwerfs against James T. Kirwan, William P. Kirwan and Shirley M. Kirwan in the amount of $83,300. It did not do so against James P. Kirwan because of bankruptcy proceedings.

7. SDCL 21–9–7 states:

Whenever an obligation in respect to real property would be specifically enforced against a particular person, it may be in like manner enforced against any other person claiming under him by a title created subsequently to the obligation, *except a purchaser or encumbrancer in good faith and for value*, and except, also, that any such person may exonerate himself by conveying all his estate to the person entitled to enforce the obligation. (Emphasis added).

protect a party who acquires title to real property on the strength of the record. *See Betts v. Letcher*, 1 S.D. 182, 46 N.W. 193 (1890). In *Betts*, we stated:

[t]he protection which the registry law gives to those taking titles or security upon land upon the faith of the records should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming this protection, and a clear equity in him who seeks to establish a right in hostility to such person. Slight circumstances, or mere conjectures, should not suffice to overthrow the title of one whose title is first on record.

*Id.* at 192, 46 N.W. at 196.

[¶ 19.] While we sympathize with the position of Vanderwerfs, it is one in which David participated in creating although admittedly without full knowledge of all the facts. However, since Territorial days, this jurisdiction has operated under a legal system where a purchaser of realty, for value and without notice of restrictions, has a right to rely on a grant that is unconditional on its face.

[¶ 20.] In conclusion, we affirm the grant of summary judgment to Gerald and Leona and First Trust National Association.

[¶ 21.] MILLER, Chief Justice, SABERS, AMUNDSON and KONENKAMP, Justices, concur.